650 So.2d 96 (1995)
Osvaldo R. SABINA and Hilb, Rogal and Hamilton Company of Tampa Bay, Inc., a Florida Corporation, Appellants,
v.
DAHLIA Corporation, a Florida Corporation, Appellee.
No. 94-01954.
District Court of Appeal of Florida, Second District.
January 27, 1995.
Robert M. Daisley and Lawrence P. Ingram of Annis, Mitchell, Cockey, Edwards & Roehn, P.A., Tampa, for appellants.
John P. Holsonback of Fuller Swindle & Holsonback, P.A., Tampa, for appellee.
*97 DANAHY, Acting Chief Judge.
We review a nonfinal order granting an injunction to enforce a covenant not to compete in an employment contract for an insurance agent's services. The appellee, Dahlia Corporation [Dahlia], sued its former employee, appellant Osvaldo Sabina, and Sabina's new employer, appellant Hilb, Rogal and Hamilton Company of Tampa Bay, Inc. [HRH], for breach of the covenant when four of Dahlia's customers transferred their insurance business to HRH after Sabina began working there. We reverse because the evidence does not support the finding of a breach of the covenant.

FACTS
When Sabina started as an agent for Dahlia, they entered into an employment contract which contained a covenant not to compete.[1] The employment agreement also provided that if Sabina breached the covenant, Dahlia would be entitled to a temporary and permanent injunction in addition to other available remedies.
Just before Sabina left Dahlia to go to work at HRH, he suggested to his boss, Richard Russo, that Dahlia sell certain accounts to HRH, specifically those of customers with whom Sabina had developed close working relationships. When Sabina changed jobs he suggested to his new boss at HRH, John Snow, that Snow contact Russo at Dahlia to discuss buying certain accounts. Snow and Russo agreed to meet to talk about Dahlia selling some accounts to HRH at a mutually agreeable price. In anticipation of the meeting between his former and current employers to negotiate this transfer of accounts, Sabina prepared from memory a list of the twelve accounts that he was very close to and which he thought Dahlia might sell. Sabina gave the list to Snow. The list included twelve customers' names, the estimated amount of annual commission earned for the agent, and the approximate expiration date of each customer's policy. The list thus disclosed important confidential information about each account. At the meeting Dahlia and HRH could not agree on a price so Dahlia refused to transfer the accounts. Snow put the list away and never showed it or gave it to anyone else.
Sometime after these negotiations fell through, three of Sabina's former customers contacted him to request his assistance in procuring insurance for them because Dahlia either would not or could not help them. Sabina told these former customers that if Dahlia provided a renewal quote for them, he could not help them due to the existence of the covenant. Dahlia did not provide renewal quotes for any of them, so Sabina, rather than have these customers go elsewhere, procured replacement insurance coverage for them. A fourth customer of Dahlia, that had dealt with Sabina while he was with Dahlia, switched its business to HRH but did not contact Sabina.
Dahlia sued Sabina for breach of the contract's covenant and HRH for tortious interference with a contractual relationship. A third count named both Sabina and HRH and alleged theft of trade secrets based on Sabina's preparing and divulging the customer list to Snow for the meeting with Russo. Dahlia moved for a temporary injunction and *98 a hearing was held on the motion. At the hearing witnesses, including Sabina himself, were available to offer testimony but the trial court did not hear any live testimony. Instead the trial court relied solely on the following documents: Dahlia's verified complaint, six affidavits submitted by Sabina and HRH, and the deposition of John Snow. The six affidavits submitted included one from Snow and one from Inez Roberson, the HRH employee who handled the customer who switched without first contacting Sabina.[2] The other four were from each customer who switched from Dahlia to HRH after Sabina began working there. In each affidavit, the customer stated that Sabina never solicited its business on behalf of HRH. The three who had contacted Sabina at HRH said they had decided to deal with HRH only after Dahlia would not or could not help them. The fourth customer stated that he transferred his insurance business to Inez Roberson at HRH because of personal ties to her and because she had repeatedly solicited his company's commercial insurance business over the years. This customer also stated that Sabina did not solicit him nor was he involved in the decision to move the account to HRH. Snow's deposition related the events surrounding the creation of the customer list for the failed negotiations and how he and Sabina discussed methods to avoid violating the covenant. He also stated that the customer list was never used for any purpose other than for the meeting with Russo.
After both sides had an opportunity to file memoranda of law on the issues, the trial judge issued the temporary injunction forbidding Sabina and HRH from further breaching the covenant by calling upon, soliciting, or procuring insurance for Dahlia's customers; utilizing confidential information or trade secrets of Dahlia's; or revealing or divulging any confidential information or trade secrets of Dahlia.[3] The judge set the injunction bond at $500.

DISCUSSION
We turn first to the issue of Sabina's solicitation of the customers as a violation of section 4(a) of the covenant. We have before us the same documents considered by the trial judge as the evidentiary basis for the injunction: Dahlia's verified complaint, Snow's deposition, and the six affidavits. Because there were no disputed factual matters at issue, we review the injunction de novo. See Operation Rescue v. Women's Health Center, Inc., 626 So.2d 664 (Fla. 1993) (permanent injunction). Aside from the bare allegation in the complaint tracking the language of the covenant that Sabina "directly *99 and indirectly" solicited Dahlia's accounts and customers, each customer involved insisted by sworn affidavit that Sabina did not call them urging transfer of their business to HRH. One said that he switched to HRH without involving Sabina at all, and the other three said it was they who sought out Sabina and not the other way around. According to these three customers, when they called Sabina, he warned them that he could not and would not be their insurance agent if Dahlia provided them a renewal quote. Each customer stated that he or she had decided to switch insurance agents only after Dahlia would not or could not help him or her.
At the hearing the trial judge and the parties' attorneys discussed the affidavits of the customers, each of which stated that the customer had called Sabina at HRH. The judge then asked Sabina's attorney how the customers knew where Sabina was located in order to contact him after he left Dahlia. Sabina's attorney answered by remarking that since Sabina was a personal friend of these customers he had merely called them before his departure from Dahlia to tell them that he was leaving Dahlia and moving to HRH. Sabina's attorney argued that Sabina had the right to tell his personal friends about such an event in his life. At this point Dahlia's attorney claimed that this statement by Sabina's attorney was clear evidence that Sabina had violated the covenant's provision not to "call upon or solicit" existing customers of Dahlia.
In the face of the four affidavits from the customers who had personal knowledge of what Sabina told them, claiming that each customer unilaterally decided to switch its business to HRH, the judge apparently based his conclusion that Sabina violated the covenant upon this remark by Sabina's attorney that Sabina had initially called his customers who were friends to tell them that he was leaving Dahlia. The inferences arising from the attorney's statement are clear. The problem is that this statement by Sabina's attorney does not constitute competent evidence before the trial court in this matter because it was an unsworn statement of a relevant fact at issue. In the absence of a stipulation, and there was none in the instant case, "a trial court cannot make a factual determination based on an attorney's unsworn statements" and "is precluded from considering as fact unproven statements documented only by an attorney." Blimpie Capital Venture, Inc. v. Palms Plaza Partners, Ltd., 636 So.2d 838, 840 (Fla. 2d DCA 1994) (citing State v. Brugman, 588 So.2d 279 (Fla. 2d DCA 1991), Schneider v. Currey, 584 So.2d 86 (Fla. 2d DCA 1991), and Leon Shaffer Golnick Advertising, Inc. v. Cedar, 423 So.2d 1015 (Fla. 4th DCA 1982)). In this case the only competent evidence adduced was by way of the deposition of Snow and the customers' affidavits. All this unrefuted evidence showed that no violation of the covenant occurred. Under these circumstances it was an abuse of discretion to issue the temporary injunction. Compare Puga v. Suave Shoe Corp., 374 So.2d 552 (Fla. 3d DCA 1979) (grant of temporary injunction affirmed where record showed covenant was being violated); also compare Cordis Corp. v. Prooslin, 482 So.2d 486 (Fla. 3d DCA 1986) (no abuse of discretion in denying temporary injunction where record showed doubt that employer had ability to succeed at trial); see generally Clark v. Kreidt, 145 Fla. 1, 199 So. 333 (1940).
We turn to the other ground for the injunction based on Dahlia's allegation that Sabina violated section 4(b) of the covenant when he used and divulged a confidential Dahlia customer list. Sabina disclosed the list of twelve customers to Snow in preparation for the negotiations for the sale of certain customers' accounts from Dahlia to HRH. We assume, without deciding, for purposes of this discussion that the list prepared by Sabina from memory qualifies as a customer list under section 542.33, Florida Statutes (1993), and Templeton v. Creative Loafing Tampa, Inc., 552 So.2d 288 (Fla. 2d DCA 1989). In his deposition Snow said he took that list to the negotiations with Dahlia. The meeting was very short because it became apparent to Snow from the outset that the price and conditions set by Dahlia were beyond any level Snow considered reasonable and that Dahlia would not compromise. According to Snow, after the meeting the list was not shown to anyone else again.
To merit an injunction based on piracy of customer lists, Dahlia had the burden *100 to show that the customer list was actually used to cause it injury. "Because the Legislature has narrowed the grounds for enforceability of non-compete covenants, the exception for specific trade secrets cannot be allowed to consume the new rule. Employers now alleging violations of specific trade secrets must be held to their burden to plead and prove the `use' of `specific trade secrets.'" Lovell Farms, Inc. v. Levy, 641 So.2d 103 (Fla. 3d DCA 1994) (citing Hapney v. Central Garage, Inc., 579 So.2d 127 (Fla. 2d DCA), review denied, 591 So.2d 180 (Fla. 1991)). We find this principle equally applicable to the other exception to the statute, customer lists. Dahlia did not carry its burden of showing that Sabina and HRH "used" the list in violating the covenant. The only "use" of the list was in Dahlia's presence, for a purpose related directly to Dahlia itself, and thus with its tacit consent. Dahlia cannot now be heard to complain that Sabina's preparation of the list for its use solely in negotiations between the former and current employers is a violation of the covenant or the statute. On the evidence presented it was an abuse of discretion to enter the injunction on this issue as well.
Finally we note that the injunction prohibits "procuring" of insurance and as such goes beyond enforcing the plain language of the covenant which proscribes "calling upon or soliciting."[4] Furthermore, the amount of bond set by the court is clearly inadequate given the lowest estimate of value as set by the customer list prepared by Sabina ($114,500). Given our disposition on the issues of proof of solicitation and use of customer lists, however, these points are moot.
We reverse the case and remand for vacation of the order of temporary injunction.
ALTENBERND and FULMER, JJ., concur.
NOTES
[1] The relevant paragraphs of the covenant provide:

2. Confidential Information. The Agent covenants and agrees that he will not at any time following the termination, for any reason whatsoever, of his employment hereunder, reveal or divulge to any person, firm or corporation any confidential information in the possession of the Company concerning the insurance requirements and practices of its insurance accounts or its customer or prospect and expiration lists which he has had knowledge of during his employment, but that he will always hold such information in strict confidence, unless required to divulge the same by a court of competent jurisdiction.
4. Restrictive Covenant. Agent expressly covenants and agrees that during the term of employment and for a period of three (3) years immediately following termination of his employment, for any cause whatsoever, so long as the Company or Company surviving, carries on the same business, Agent will not for any reason whatsoever, directly or indirectly, for himself or on behalf of, or in conjunction with, any other person, persons, company, partnership, corporation or business entity:
(a) Call upon or solicit any insurance account or customers of the Company;
(b) Divulge confidential or trade information or customer or prospect lists of the Company[.] (Emphasis added.)
[2] This customer, the principal of the company seeking commercial insurance, was a personal friend of Roberson's. HRH and Roberson had handled her friend's personal insurance in the past.
[3] Specifically, the injunction entered provided:

[T]hat [appellant] Sabina is ... enjoined, directly or indirectly, for himself or on behalf of, or in conjunction with, any other person, persons, company, partnership, corporation or business entity, from:
(a) calling upon, soliciting, or procuring insurance for any insurance account or customer of [Dahlia];
(b) utilizing confidential information or trade secrets of [Dahlia]; and,
(c) revealing or divulging to any person, firm or corporation any confidential information or trade secrets of [Dahlia].
... that [appellant HRH] is ... enjoined, directly or indirectly, for itself or on behalf of, or in conjunction with, any other person, persons, company, partnership, corporation or business entity, from:
(a) calling upon, soliciting or procuring insurance for any insurance account or customer of [Dahlia] identified on the list of customers prepared by Osvaldo Sabina or thereafter made known to HRH by Osvaldo Sabina;
(b) utilizing confidential information or trade secrets of [Dahlia], including but not limited to, the information set forth on the list of customers prepared by Osvaldo Sabina or thereafter made known to HRH by Osvaldo Sabina; and
(c) revealing or divulging to any person, firm or corporation any confidential information or trade secrets of [Dahlia], including, but not limited to, the information set forth on the list of customers prepared by Osvaldo Sabina or thereafter made known to HRH by Osvaldo Sabina.
... .
... that [Dahlia] shall post a cash, cash equivalent, or surety bond in the amount of Five Hundred Dollars ($500.00) as security for [appellants'] damages in the event it is subsequently determined that this Injunction was improvidently granted.
[4] Had the covenant proscribed Sabina's procuring of insurance, see Joseph U. Moore, Inc. v. Neu, 500 So.2d 561 (Fla. 2d DCA 1986) (covenant proscribed soliciting and procuring of business of former employer's customers), or Joseph U. Moore, Inc. v. Howard, 534 So.2d 935 (Fla. 2d DCA 1988) (covenant proscribed soliciting or accepting former customers), then the injunction in the instant case would likely have been proper.