667 So.2d 961 (1996)
Rockne W. DYER, Appellant/Cross-Appellee,
v.
PIONEER CONCEPTS, INC., Appellee/Cross-Appellant.
No. 95-03627.
District Court of Appeal of Florida, Second District.
February 14, 1996.
*963 Clifford J. Hunt and M. Deanna Harris of Riden, Earle & Kiefner, P.A., St. Petersburg, for Appellant/Cross-Appellee.
Marion Hale, Charles A. Samarkos, and Sharon E. Krick of Johnson, Blakely, Pope, Bokor, Ruppel & Burns, P.A., Clearwater, for Appellee/Cross-Appellant.
PARKER, Judge.
Rockne W. Dyer appeals a temporary injunction which prohibits him from engaging in the floor care maintenance business in five counties for thirty months. Pioneer Concepts, Inc., filed a cross-appeal, challenging the trial court's decision to limit the injunction to apply in only five counties. We affirm the temporary injunction but remand to the trial court to modify the injunction.
Dyer began to work for Pioneer Concepts in 1985. Sometime during his employment, Dyer signed an employment and noncompetition agreement which prohibited Dyer from engaging in any competition for five years within 100 miles of each of Pioneer Concepts' branch offices from which Dyer had been employed by Pioneer Concepts. Pioneer Concepts provided floor care maintenance services to approximately 350 Winn Dixie stores in ten states, including the State of Florida. In the course of his employment with Pioneer Concepts, Dyer knew Ken Burns, Winn Dixie's regional operations superintendent. Pioneer Concepts terminated Dyer from his employment in November 1994.
In December 1994 Steve Culler decided to enter the State of Florida to expand his floor care maintenance business. Culler's business had Winn Dixie as a customer in Kentucky. Culler learned of Burns's existence through the Louisville office of Winn Dixie. Culler sent Burns a memo with a proposal for the provision of floor care maintenance services. Culler, however, could not get past Burns's secretary. In February 1995 Culler became aware of Dyer. He asked Dyer if Dyer would call Burns and set up a meeting so that Culler could discuss his proposal with Burns. Dyer did so, and Culler, Burns, and Dyer had a meeting in February 1995. In March 1995 Culler's new company, Classic Leasing, Incorporated entered into contracts with Winn Dixie to provide floor care maintenance services to sixteen Winn Dixie stores. Up until that time Pioneer Concepts had been providing these services to those stores. Dyer went to work for Classic Leasing in March 1995.
Section 542.33(2)(a), Florida Statutes (1993), provides that an employee may agree with his or her employer "to refrain from carrying on or engaging in a similar business and from soliciting old customers" of the employer. This court has held that the statute authorizes contracts in restraint of trade only to protect the employer's legitimate business interest. Hapney v. Central Garage, Inc., 579 So.2d 127 (Fla. 2d DCA), review denied, 591 So.2d 180 (Fla.1991), disapproved on other grounds by Gupton v. Village Key & Saw Shop, Inc., 656 So.2d 475 (Fla.1995). An employer's legitimate protectable *964 interests are trade secrets and confidential business lists, records, and information; customer goodwill; and, to a limited extent, extraordinary or specialized training which the employer has provided. Hapney, 579 So.2d at 131.
In the instant case the trial court found that Pioneer Concepts had legitimate business interests in the right to prohibit the direct solicitation of existing customers and in its provision of extraordinary training. Based on the evidence recited earlier in this opinion, we conclude that the trial court did not err in its determination that Pioneer Concepts proved its protectible interest in its right to prohibit the direct solicitation of existing customers and in its implied ruling that Dyer breached the employment contract by soliciting Pioneer Concepts' existing customer for his prospective employer. We, however, conclude that the trial court erred in its determination that Pioneer Concepts had a protectible business interest due to its provision of specialized training to Dyer.
In order for training to be a protectible business interest, it must be extraordinary. Hapney, 579 So.2d at 132. Training is classified as extraordinary when it exceeds "what is usual, regular, common, or customary in the industry in which the employee is employed." Hapney, 579 So.2d at 132. The Hapney court held that Hapney's employer did not have a protectible business interest in providing training to Hapney, who extended his air-conditioning installation and repair skills to include cruise control units and cellular telephones.
The Hapney court relied on the case of Moore Business Forms, Inc. v. Foppiano, 181 W.Va. 305, 382 S.E.2d 499 (1989), in its determination of the type of training needed to be classified as extraordinary. The employer sent Foppiano to a two- or three-week training school where it familiarized Foppiano with the employer's product line and instructed him in sales techniques. Foppiano received on-the-job training in designing customized forms for the employer's clients. Foppiano also attended company seminars and meetings designed to familiarize sales representatives with new products and to provide additional sales training. The Foppiano court held that the employer did not have a protectible business interest in extraordinary training because it did not provide Foppiano with any unique or specialized training.
In the instant case, the evidence, in the light most favorable to the employer, showed that Dyer received training in stripping floors and the use of the equipment leased to grocery stores. Dyer was trained for his management position by working with Linda Pollard, who was the President of Pioneer Concepts, and her husband. Dyer attended a seminar on the development of interpersonal skills and one on hiring and firing techniques. Dyer also attended a manufacturer-sponsored seminar which trained Dyer to repair the equipment. None of this training appears to be extraordinary in the manner that the Hapney and Foppiano courts have required. This court, therefore, cannot uphold the trial court's conclusion that Pioneer Concepts had a legitimate business interest in terms of providing extraordinary training to Dyer.
Dyer argued to the trial court and in this appeal that if an injunction were proper, the court should enjoin Dyer only from soliciting existing customers and not from engaging in providing floor care maintenance services.[1] As discussed above, Pioneer Concepts had a legitimate business interest in prohibiting Dyer from soliciting existing customers; therefore, the trial court properly entered an injunction with this proscription.
Pioneer Concepts, however, has no business interest in prohibiting competition per se. See Hapney. The Hapney court stressed an individual's right to earn a living, even in competition with his or her former employer, as long as the individual will not have an unfair advantage in future competition with the former employer without the covenant. Hapney, 579 So.2d at 130. A former employer is not entitled to enjoin the former employee from employment with a *965 competitor unless the former employer has proved that the employment itself causes irreparable injury. State Chem. Mfg. Co. v. Lopez, 642 So.2d 1127 (Fla. 3d DCA 1994). Pioneer Concepts proved only its legitimate business interest in customer goodwill.[2] The injunction's prohibition of Dyer from engaging in the business of providing floor care maintenance services only facilitates to enjoin competition per se. Because Pioneer Concepts failed to prove extraordinary training or the use of confidential information, Dyer does not have an unfair competitive advantage over Pioneer Concepts. The injunction, therefore, should be tailored narrowly to protect Pioneer Concepts' interest in preventing the solicitation of existing customers. Accordingly, we reverse the part of the injunction which prohibits Dyer from engaging in the business of providing floor care maintenance services and direct the trial court to modify the injunction to prohibit Dyer only from soliciting Pioneer Concepts' existing customers.[3]
Pioneer Concepts filed a cross-appeal contesting the fact that the trial court limited the injunction to only five counties when the agreement included a geographical restriction of "a radius of 100 miles of each of the Company's branch offices from which he has been employed by Company, conducted sales for the Company, or provided janitorial and maintenance or other services on behalf of Company." A trial court may address whether the geographical restriction is reasonable on its face regardless of whether the defendant raises the issue in his pleadings. Silvers v. Dis-Com Sec., Inc., 403 So.2d 1133 (Fla. 4th DCA 1981). Dyer never contested the reasonableness of this geographical restriction in the trial court, and neither the parties nor the court raised this issue during the evidentiary hearing until the court announced its ruling. Then the trial judge stated that the time and area restrictions were too broad. She explained that she would limit the restriction to five counties because the proscription from engaging in the floor care maintenance business "really nails" Dyer.
In order for a trial court to address the reasonableness of the geographical restriction on its own, the trial court must find that the covenant's restriction is not reasonable on its face. Silvers, 403 So.2d at 1136. We cannot agree with the trial court if it concluded that this covenant was unreasonable on its face.[4]Cf. Graphic Business Sys., Inc. v. Rogge, 418 So.2d 1084 (Fla. 2d DCA 1982) (restriction of seventy-five-mile radius from city where employee worked for former employer was reasonable on its face). When a covenant not to compete is reasonable on its face, then the defendant has the burden to plead and prove that the restriction is unreasonable based on the facts of the case. Silvers, 403 So.2d at 1135. Dyer never attempted to show that the geographical restriction was unreasonable. Pioneer Concepts' evidence showed that Dyer worked for Pioneer Concepts in more than the five counties to which the trial court restricted the injunction. We, therefore, conclude that the trial court abused its discretion in limiting the injunction to five counties.
We affirm the trial court's order granting a temporary injunction in favor of Pioneer Concepts. We remand the case to the trial court to modify the injunction to enjoin Dyer only from soliciting existing Pioneer Concepts' customers and to remove any restriction prohibiting Dyer from engaging in providing floor care maintenance services. *966 Further, the trial court should modify the temporary injunction to apply the geographical area contained in the noncompetition agreement.
SCHOONOVER, A.C.J., and FRANK, J., concur.
NOTES
[1] Dyer also argued that the injunction was improper because of Pioneer Concepts' unclean hands. We conclude, without comment, that this argument has no merit.
[2] Pioneer Concepts attempted to prove an interest in trade secrets and confidential information; however, the trial court implicitly found that Pioneer Concepts did not prove this. That conclusion was correct because Pioneer Concepts failed to prove that Dyer used any confidential information in his new employment. It is not enough that the former employee knew confidential information; the former employer must prove that the employee is using the information in his or her new job. Sabina v. Dahlia Corp., 650 So.2d 96 (Fla. 2d DCA 1995).
[3] We recognize that this injunction may have little effect because Dyer already has opened the door for Classic Leasing to deal with Winn Dixie, Pioneer Concepts' main customer. Notwithstanding this fact, the purpose of an injunction is to prevent irreparable injury. Tiffany Sands, Inc. v. Mezhibovsky, 463 So.2d 349 (Fla. 3d DCA 1985); the purpose is not to punish.
[4] The trial court never stated that the covenant was facially unreasonable. We must assume that the trial court concluded this because it addressed the issue without Dyer raising it.