870 So.2d 111 (2003)
ADVANTAGE DIGITAL SYSTEMS, INC., Michael Knaus, James Geenen, and Andrew Foust, Appellants,
v.
DIGITAL IMAGING SERVICES, INC., Appellee.
No. 2D02-2662.
District Court of Appeal of Florida, Second District.
December 3, 2003.
Rehearing Denied April 8, 2004.
*113 Gregory P. Abaray of Law Offices of Neal L. O'Toole, P.A., Bartow, for Appellants.
William H. Drumm of Icard, Merrill, Cullis, Timm, Furen & Ginsburg, P.A., Sarasota, for Appellee.
*114 NORTHCUTT, Judge.
The circuit court entered a temporary injunction restraining Michael Knaus, James Geenen, Andrew Foust, and Advantage Digital Systems, Inc., from competing, in various ways, with Digital Imaging Services, Inc. Knaus, Geenen, and Foust formerly worked for Digital but now are employed by Advantage. Digital filed suit against the three men and Advantage, seeking injunctive relief and damages for theft of trade secrets, confidential business information, and a client base; and for tortious interference with business relationships. Digital also sought an injunction against Geenen and Foust based on their alleged violations of noncompetition agreements.[1] The temporary injunction prohibits Geenen and Foust from having any contact with Digital's customers, forbids Knaus to do business with any of Digital's customers, and enjoins Advantage from soliciting present customers of Digital. As we will discuss, the court erred in enjoining Knaus and Advantage. Although it could properly enjoin Geenen and Foust, as to them the injunction is overly broad. The entire injunction must be reversed.
While the injunctions against the various parties involve different theories based on different facts, the history of the dispute is applicable to all. Digital is a company that sells and services wide-format analog and digital printing systems. In 2000, Knaus began working as an independent contractor for Digital, selling and servicing the printing systems. He did not sign a noncompetition agreement. Digital hired Geenen and Foust as service technicians in April 2001. They each signed noncompetition agreements. Knaus met Jeffrey Long, a Digital customer, through his work. In September 2001, Knaus and Long incorporated Advantage. Advantage sells and services regular photocopying machines, as well as the wide-format systems. In February 2002, Knaus resigned from Digital and began working for Advantage. Geenen and Foust later joined him.

I. INJUNCTIONS AGAINST GEENEN AND FOUST.
The party seeking to enforce a noncompetition agreement must plead and prove the existence of one or more legitimate business interests. § 542.335(1)(b), Fla. Stat. (2000). Geenen and Foust contend that Digital failed to meet this requirement, but we disagree. One of the legitimate interests listed in the statute is "[s]ubstantial relationships with specific prospective or existing customers." § 542.335(1)(b)3. Digital proved it has a customer base and, under the language of its agreements with Geenen and Foust, Digital has a right to protect itself from solicitation of those customers by its former employees. See Dyer v. Pioneer Concepts, Inc., 667 So.2d 961, 964 (Fla. 2d DCA 1996).
Still, the injunction against Geenen and Foust is too broad. The noncompetition agreements on which the injunction was based each stated that the employee "will not solicit for sales, service or supplies from Digital Imaging Services, Inc. customers. This noncompete agreement will apply both during employment and for a period of five (5) years after separation from Digital Imaging Services, Inc. This agreement will apply to the State of Florida." The injunction against Geenen and Foust goes far beyond prohibiting solicitation, however. Rather, the court enjoined each of the men from "having any contact, *115 whatsoever, with any customers of [Digital] pursuant to the noncompete agreement." Thus, the injunction essentially and impermissibly rewrites the parties' agreements by disallowing any "contact" with Digital's customers. See Twenty Four Collection, Inc. v. Keller, 389 So.2d 1062, 1064 (Fla. 3d DCA 1980); see also Sabina v. Dahlia Corp., 650 So.2d 96, 100 (Fla. 2d DCA 1995) (noting that an injunction prohibiting "procuring" of insurance when the plain language of the covenant proscribed "calling upon or soliciting" would not be proper). If a Digital customer approaches Geenen and Foust, that is not solicitation, see Lotenfoe v. Pahk, 747 So.2d 422, 425 (Fla. 2d DCA 1999), but would be proscribed "contact" under the injunction. Because the noncompetition agreements prohibit only solicitation, that is the only activity that can be the subject of an injunction based on the parties' contracts.
Additionally, the injunction does not distinguish between Digital customers that existed at the time of Geenen's and Foust's employment and prospective Digital customers. Section 542.335(1)(b)3 protects substantial relationships with both types of customers, but it is Digital's burden to plead and prove the existence of this "legitimate business interest." § 542.335(1)(b). Digital's complaint asserted only that Geenen and Foust had knowledge of its "existing commercial customer relationships" and had contacted Digital's "existing customers." Digital did not plead and prove the necessity of restraining its former employees from soliciting any "specific prospective" customers.
Finally, the court's order is not clear concerning the life of the injunction. The written order recites that the court orally ruled the injunction would remain in effect for five years. But then the order states "to make the record as clear as possible, the Court enters the following Temporary Injunction." The numbered paragraphs that follow this declaration do not address the length of time the injunction will remain in effect. Although the agreements themselves contemplated a five-year period, section 542.335(1)(d)1 contains a presumption that a restraint in excess of two years is unreasonable. Where no evidence rebuts this presumption, it is error to enter an injunction in excess of two years. See Flickenger v. R.J. Fitzgerald & Co., 732 So.2d 33, 34 (Fla. 2d DCA 1999).
We reverse the injunction against Geenen and Foust and remand with directions to the circuit court that it may enjoin them only from soliciting Digital's existing customers. If the court enters a new injunction, it must also limit the effectiveness of the injunction to a reasonable period.

II. INJUNCTION AGAINST KNAUS.
For approximately six months after Knaus and Long incorporated Advantage, Knaus continued to work as an independent contractor for Digital. At the hearing on the temporary injunction, Digital's representative asserted that during this period Knaus sabotaged Digital's customers' machines, presumably to undermine the customers' confidence in Digital and to gain business for Advantage. The circuit court enjoined Knaus "from doing business with any customers of [Digital] based upon the court's finding that there is a substantial likelihood that he committed sabotage."
Because Knaus did not sign a noncompetition agreement with Digital, we assume the court granted the injunction against him based on the claim of tortious interference with business relationships. A party who seeks a temporary injunction *116 based on this theory must generally show "(1) a clear legal right or interest in the subject matter of the suit, (2) a substantial likelihood of success on the merits, and (3) the likelihood of irreparable harm because of the unavailability of an adequate remedy at law." Heavener, Ogier Servs. Inc. v. R.W. Fla. Region, Inc., 418 So.2d 1074, 1075 (Fla. 5th DCA 1982). For purposes of this analysis, we will assume that the circuit court correctly decided it was likely Digital would succeed on its claim of sabotage. But see Kozich v. DeBrino, 837 So.2d 1041, 1043 (Fla. 4th DCA 2002) (noting that the findings of fact and conclusions of law made at a temporary injunction hearing are not binding on the court on final hearing, where the parties can present their full case).
But even assuming Digital's likelihood of success, an injunction is not an appropriate remedy. By its nature, an injunction restrains commission of a future injury; a court cannot prevent what has already occurred. Estate of Yerex, 651 So.2d 220, 222 (Fla. 4th DCA 1995). Knaus's alleged sabotage happened while he still worked for Digital. But he ended his association with that company. Therefore, he can no longer sabotage the machines of Digital's customers or adversely affect Digital's relationships with those customers. Digital's remedy for the alleged sabotage, if any, is damages. Accordingly, we reverse the injunction entered against Knaus.

III. INJUNCTION AGAINST ADVANTAGE.
Again, presumably the court enjoined Advantage based on Digital's claim of tortious interference with business relationships. Competition for business by a competitor is not actionable, even if intentional, unless the competitor is attempting to induce a customer to breach a contract that is not terminable at will. See Sethscot Collection, Inc. v. Drbul, 669 So.2d 1076, 1078 (Fla. 3d DCA 1996); Greenberg v. Mount Sinai Med. Ctr. of Greater Miami, Inc., 629 So.2d 252, 255 (Fla. 3d DCA 1993). Digital offered no proof that any of its contracts were other than terminable at will. As such, it failed to show a substantial likelihood of success on the merits. The court erred in enjoining Advantage from soliciting Digital's customers, and we reverse the injunction.
Advantage cannot, however, assist Geenen and Foust in breaching their noncompetition agreements with Digital. If the circuit court enters a new injunction against those employees, Advantage must insure that they do not violate that restraint.

IV. INJUNCTION BOND.
The enjoined parties also challenge the amount of the injunction bond and contend that the court erred in not holding a bond hearing. At the end of the hearing on the merits of the injunction, their counsel asked the court to set "an extraordinarily high bond." Digital's counsel requested that the bond amount be "minimal." Immediately thereafter, the court set the bond at $2000. The enjoined parties filed a motion to dissolve, vacate, clarify, or modify the injunction ten days later. They argued that the court erred in setting the bond amount without a hearing concerning what their foreseeable damages would be if the injunction was wrongfully issued. The court denied relief. At that point, the enjoined parties pursued this appeal.
When a court sets an injunction bond, the amount should reflect the court's determination of the foreseeable damages for a wrongful injunction. See Parker Tampa Two, Inc. v. Somerset Dev. Corp., 544 So.2d 1018, 1021 (Fla.1989). When the court fails to do so, the remedy *117 is generally to remand for a new bond hearing. Lotenfoe, 747 So.2d at 425. But here, as in Lotenfoe, we are reversing the injunctions. In such a case, where the enjoined parties expeditiously proceed to exhaust their available remedies, the damages for the wrongful injunction will not be limited by the erroneously set bond. Id. at 426; SeaEscape, Ltd., Inc. v. Maximum Mktg. Exposure, Inc., 568 So.2d 952, 955 (Fla. 3d DCA 1990). The enjoined parties here diligently sought relief from the erroneously entered bond. As such, their damages for the wrongful injunctions will not be limited to the amount of the bond Digital posted.
Reversed.
FULMER and CASANUEVA, JJ., Concur.
NOTES
[1] Digital also sued other parties who were not enjoined and raised other theories for relief that are not the subject of the present injunction.