863 So.2d 465 (2004)
CHARLOTTE COUNTY, Florida, Appellant,
v.
Richard VETTER, as Trustee for the Charlotte County Park of Commerce, LLC; and Tremron of Miami, Inc., Appellees.
No. 2D03-3404.
District Court of Appeal of Florida, Second District.
January 21, 2004.
*467 David Smolker and Brian Bolves of Bricklemyer Smolker & Bolves, P.A., Tampa, and W. Cort Frohlich of Wilkins, Frohlich, Jones, Hevia, Russell & Sutter, P.A., Port Charlotte, for appellant.
Alan W. Roddy of Matthews Eastmoore Hardy Crauwels & Garcia, Sarasota, for Amicus Curiae appellant.
Kenneth G. Oertel and Jeffrey Brown of Oertel, Fernandez & Cole, P.A., Tallahassee, for appellees.
COVINGTON, Judge.
Charlotte County challenges a preliminary injunction that mandated its approval of a subdivision plat application and site plan application concerning land adjacent to the Charlotte County Airport. We accept the circuit court's findings of fact, but conclude that we must reverse in part to the extent the order prematurely granted the relief requested in the complaint for damages, a permanent injunction, and a writ of mandamus.
In December 2001, Richard Vetter bought a ninety-two-acre parcel that was already zoned IG, which permits a broad range of intensive commercial and industrial uses, including heavy manufacturing. The property also benefited from an airside access agreement with the airport. Vetter conceived of an industrial park with airside access to be known as the Charlotte County Park of Commerce. The parcel was already composed of twenty-four lots from one to ten acres in size; Vetter proposed a replat into fifty-one parcels. Before the purchase, he performed a due diligence investigation and ascertained that the industrial zoning would permit his concept. He purchased the property from Robert McQueen and without delay employed the services of civil engineer Jim Herston and other professionals to assist with the proposed platting and development. Vetter formed the Charlotte County Park of Commerce, LLC, and the Charlotte County Airpark Property Owners' Association, Inc., a not-for-profit corporation, to provide rules for the owners' use of the airpark's properties and common areas.
The county enthusiastically and uniformly endorsed the development in a January 2002 meeting, and Vetter filed for preliminary plat approval for the subdivision the next month. He received preliminary plat approval in May 2002, by which time he had already expended substantial sums and entered various contracts to facilitate the project, including agreements for condominium aircraft hangars and other commercial uses. He sold two lots to Tremron in May or June for a proposed concrete paver manufacturing facility.
By August 2002, Tremron had met with county officials in a preapplication conference concerning its plans and the next month filed a preliminary site plan review application for an approximately 14,000-square-foot facility situated on the two lots. It expended considerable sums to make its facility a reality. Tremron, however, received no preliminary approval.
Meanwhile, despite Vetter's preliminary plat approval, the county apparently experienced second thoughts about the kind of industrial development long since permitted in the airport area. County Planner Williams advised Vetter after the preliminary plat approval that the county contemplated a zoning change for the area. By this time, in reliance on the existing zoning, Vetter and Tremron had already entered *468 a contract. In fact, McQueen testified at the preliminary injunction hearing that the county had issued him a permit in August 2002 for a concrete batch plant on one of the lots in this plat; that permitted use is a heavier industrial use than the proposed paver manufacturing plant.
On October 8, 2002, the county approved ordinance 2002-054, which referenced its application to make amendments to the comprehensive plan. These amendments ultimately resulted in ordinance 2003-022, which was not fully effective until June 2003. By ordinance 2003-022, the county recited its desire for "commercial and light industrial uses" in the airport area and implemented an airport overlay district to the 1997-2010 Charlotte County Comprehensive Plan. Between November 2002 and February 2003, even before the ordinance became effective, the county was pressing Tremron and Vetter with numerous new requirements for Vetter's plat approval and Tremron's site approval and building permit application.
Policy 2.2.31 of the Airport Commerce Park Overlay District specifically excepts certain uses, including "asphalt/concrete manufacturing and storage and similar uses." Policy 2.5.8 thereof specifically states that the policy 2.2.31 prohibition is not intended to prohibit a paver manufacturing and storage facility proposed by Tremron within the overlay district, the development of which is currently the subject of development agreement negotiations with the county. If the county does not enter into such an agreement with Tremron, however, the prohibition will universally exclude that use. It further specifies that this language is not meant to give rise to an equitable or vesting claim. The county also refers to other pending applications, including Vetter's, that are the subject of pending development agreement negotiations.
Vetter and Tremron filed a complaint on March 25, 2003, alleging a claim for declaratory relief, permanent injunction, writ of mandamus, for damages under 42 U.S.C. § 1983, and for inverse condemnation. After a hearing on the motion for preliminary injunction, the court made the requisite findings that Vetter and Tremron had demonstrated a substantial likelihood of irreparable harm if the injunctive relief was not granted, that they lacked an adequate remedy at law, and that there was a substantial likelihood that they would succeed on the merits of their complaint. The preliminary injunction ordered the county to issue site plan approval to Tremron and to issue promptly all subsequent building permits, to refrain from imposing a ninety-day moratorium against Tremron or Vetter with respect to the subject property, and to enjoin it from applying the airport overlay district standards or other new standards against Vetter and Tremron.
Even county witnesses testified that the two projects complied with the existing zoning laws but for the question of the airport overlay district issue. There remained few impediments to the requirements under the preexisting ordinances for approval of the subdivision plat and site plan applications. We accept for purposes of this analysis the circuit court's findings that support a preliminary injunction. But the findings of fact and conclusions of law made at a preliminary injunction hearing are not binding on the court at final hearing, where the parties present their full case to the court. Advantage Digital Sys., Inc. v. Digital Imaging Servs., Inc., 28 Fla. L. Weekly D2756, *2, ___ So.2d ___, ___, 2003 WL 22848954, *2 (Fla. 2d DCA Dec.3, 2003) (citing Kozich v. DeBrino, 837 So.2d 1041, 1043 (Fla. 4th DCA 2002)).
To warrant a preliminary injunction, the party seeking relief must show the likelihood of irreparable harm, the lack *469 of an adequate remedy at law, the substantial likelihood of success on the merits, and public interest considerations. Snibbe v. Napoleonic Soc. of Am., Inc., 682 So.2d 568, 570 (Fla. 2d DCA 1996). A trial court has wide discretion to grant or deny a temporary injunction, and an appellate court will not interfere with the exercise of such discretion unless the party challenging the grant or denial shows an abuse of that discretion. Perry & Co. v. First Sec. Ins. Underwriters, Inc., 654 So.2d 671, 671 (Fla. 3d DCA 1995). On review of an order granting a temporary injunction, the trial court's findings of fact cannot be reversed if they are supported by competent, substantial evidence. M & E Distribs., Inc. v. Worley, 840 So.2d 457, 459 (Fla. 4th DCA 2003).
Vetter clearly established through testimony and exhibits the extraordinary expense he incurred in reliance on the county's strong support of the commerce park. As a result, he assumed many contractual obligations in the context of both the purchase and development of the property. The county argues that he has an adequate remedy at law. We disagree. Substantial, competent evidence supports the preliminary injunction. That said, the circuit court exceeded its power in granting Vetter and Tremron the ultimate relief sought in their complaint.
City of Lauderdale Lakes v. Corn, 427 So.2d 239, 242 (Fla. 4th DCA 1983), and Broward County v. Narco Realty, Inc., 359 So.2d 509, 510 (Fla. 4th DCA 1978), support the remedy of mandamus in the context of a site plan or building permit where the legal requirements are met and no element of discretion remains. However, the present case stands in a different procedural posture. In Corn, the court upheld a writ of mandamus granted after a final hearing; in Narco Realty, the parties stipulated that the legal requirements for plat approval had been met. In contrast here, the preliminary injunction effectively granted the ultimate relief requested despite the lack of a final hearing for permanent injunctive and mandamus relief.
A temporary injunction does not decide the merits of a case unless the hearing is set for that purpose and the parties have had a full opportunity to present their cases. City of Miami Springs v. Steffen, 423 So.2d 930, 931 (Fla. 3d DCA 1982). A preliminary injunction is improperly entered when it bypasses the procedures for a permanent injunction and preliminarily grants the same relief that would have been given in a final order of permanent injunction. Lee County Elec. Co-op. v. Cook, 604 So.2d 911, 913 (Fla. 2d DCA 1992).
We agree with the county that the purchase of land does not create a right to rely on the existing zoning. See Town of Largo v. Imperial Homes Corp., 309 So.2d 571, 573 (Fla. 2d DCA 1975). However, the fact that Vetter and Tremron had not received the building permit or made physical changes to the land does not preclude the application of the doctrine of equitable estoppel. Id. Both Vetter and Tremron have provided evidence of their reliance on the county's representations to their clear and substantial detriment. To preserve the status quo, we affirm the preliminary injunction to the extent that it orders that the county expeditiously proceed to complete the appellees' permit application process pending the final hearing. We also affirm the preliminary injunction to the extent that it effectively lifts the moratorium imposed under the ordinance. See City of Gainesville v. Watson Constr. Co., 815 So.2d 785, 785 (Fla. 1st DCA 2002). We otherwise reverse.
*470 Affirmed in part, reversed in part, and remanded for further proceedings.
NORTHCUTT and WHATLEY, JJ., concur.