HARRIS, J.
Nazia, Inc. ("Nazia") appeals a temporary injunction requiring it to remove construction that allegedly interfered with a license that gave Amscot Corporation ("Amscot") the right to use parking spaces on Nazia's property. For the reasons that follow, we hold that the trial court abused its discretion in granting the temporary injunction and reverse.
Nazia owns property that shares a southern border with property on which Amscot operates its business. In 2008, the parties entered into an agreement entitled "irrevocable license" that permitted Amscot to "use" ten of Nazia's parking spaces for $ 6000 annually. The agreement referenced a sketch purporting to show the location of a designated parking area for the licensed parking spaces. Subsequently, the parties amended the agreement to allow Amscot to use twenty parking spaces for $ 27,000 annually. The amended licensing agreement referenced an exhibit showing an extended version of the original designated parking area along the southern border of Nazia's property and specifically authorized Amscot to "erect and maintain professional signs indicating Amscot Customer and Employee Parking at the Parking Lot."
In 2018, Nazia began construction of a building on the southern edge of its real property that Amscot claimed interfered with the operation of its business. When Nazia failed to comply with Amscot's demand letter asking Nazia to cease construction, Amscot promptly brought an action seeking temporary and permanent injunctive relief.
At the hearing on the motion for temporary injunction, Amscot's senior vice president testified about the amended licensing agreement and stated that the twenty parking spaces were in the designated parking area along the fence line separating the Nazia property and the Amscot property. He also stated that Amscot placed security lights along the northern side of the Amscot building to illuminate the parking spaces to provide security, and *705 that Amscot constructed a sidewalk between the properties for its customers and employees to use. He further explained that because the designated parking area was well lit and Amscot had exterior building cameras observing the area, it provided safe access to the Amscot building. He complained that the construction took up some of the parking spaces and blocked the sidewalk between the properties. However, he admitted that Amscot customers and employees used parking spaces throughout the Nazia property.
The president of Nazia testified and rejected Amscot's contention that there were twenty parking spaces in the designated parking area. Specifically, he appeared to contest the accuracy of the exhibit attached to the amended licensing agreement, explaining "[i]t was just a sketch to give an understanding to [Amscot] that [Amscot] can start parking here if [Amscot would] like." He explained, in relevant part, that Amscot could only park ten to twelve cars in the designated parking area before construction, because there was a light post and a tree blocking a significant portion of the border between the properties, and that the construction blocked only one or two parking spaces. He further testified that construction began in January 2018, that Nazia had to date spent $ 200,000 on the construction, that Amscot never objected to the construction until June 2018, and agreed that Amscot customers parked throughout Nazia's parking lot-not just in the designated parking area.
Following the hearing, the trial court entered a temporary injunction in favor of Amscot, finding that "Nazia's willful and continuing encroachment, trespass, and interference with Amscot's License is properly subject to temporary and permanent injunctive relief." The court temporarily enjoined Nazia from any and all construction on the parking lot and ordered Nazia to return the parking lot to its original condition and restore Amscot to its parking rights under the license within thirty (30) days. Nazia appealed.
We review de novo a trial court's ruling on a temporary injunction pertaining to purely legal matters. Suggs v. Sw. Fla. Water Mgmt. Dist., 953 So.2d 699, 699 (Fla. 5th DCA 2007). On appeal, Nazia argues that the trial court erred in imposing a temporary injunction because Amscot only possessed a license to utilize the property, which could legally be revoked at any time, and that the temporary injunction went beyond simply preserving the status quo and awarded Amscot the same relief it would have received in a final court order of permanent injunction. Amscot responds that it possessed a lease over the designated parking area and spent substantial sums to use the property. We agree with Nazia. From our review of the record, we conclude that Amscot is unlikely to succeed on the merits and that the temporary injunction would not preserve the status quo, warranting reversal.
"[A] temporary injunction is an extraordinary remedy that can only be granted if the movant establishes (1) a likelihood of irreparable harm, (2) unavailability of an adequate legal remedy, (3) substantial likelihood of succeeding on the merits, and (4) support for the injunction within considerations of public interest." Phantom of Clearwater, Inc. v. Pinellas Cty., 894 So.2d 1011, 1014 (Fla. 2d DCA 2005). "The primary purpose of entering a temporary injunction is to preserve the status quo pending the final outcome of a cause." Yardley v. Albu, 826 So.2d 467, 470-71 (Fla. 5th DCA 2002). "The status quo which will be preserved by a preliminary injunction is the last, actual, peaceable, noncontested condition which preceded the pending controversy."
*706 Chi. Title Ins. Agency of Lee Cty. v. Chi. Title Ins. Co., 560 So.2d 296, 297 (Fla. 2d DCA 1990). "A preliminary injunction is improperly entered when it bypasses the procedures for a permanent injunction and preliminarily grants the same relief that would have been given in a final order of permanent injunction." Charlotte Cty. v. Vetter, 863 So.2d 465, 469 (Fla. 2d DCA 2004) (citing Lee County Elec. Co-op., Inc. v. Cook, 604 So.2d 911, 913 (Fla. 2d DCA 1992) ).
We first look at the relationship between the parties. The fact that an agreement is called a " 'license' or contains a conclusory provision that the parties have a relationship of licensor and licensee is not determinative. Rather, the proper characterization of the agreement is discerned by the actual terms, conditions, rights and obligations expressly set forth in the agreement." Midgard Mgmt., Inc. v. Park Ctr. Med-Suites, LLC, 114 So.3d 302, 307 (Fla. 3d DCA 2013). "[A] license is not an interest in real property; it merely gives one the authority to do a particular act on another's land." Keane v. President Condo. Ass'n, 133 So.3d 1154, 1156 (Fla. 3d DCA 2014) (holding that where parties stipulated that agreement permitting condominium unit owner to use parking space was a license, condominium association could revoke license at will). "It conveys no interest in the land and may not be assigned or conveyed by the licensee." Brevard Cty. v. Blasky, 875 So.2d 6, 12 (Fla. 5th DCA 2004).
A "lease," on the other hand, involves "a conveyance by the owner of an estate to another of a portion of his interest therein for a term less than his own [which] passes a present interest in the land for the period specified." Outdoor Media of Pensacola, Inc. v. Santa Rosa Cty., 554 So.2d 613, 615 (Fla. 1st DCA 1989). Generally, whether an agreement is a license or a lease hinges on whether it is exclusive. See, e.g., Id. at 616 (determining that subject agreement was a lease because county granted the company "exclusive right to place signs on county rights of way for a three-year period"); Randall Indus., Inc. v. Lee Cty., 307 So.2d 499 (Fla. 2d DCA 1975) (holding that license agreement giving taxi company exclusive use of airport parking spaces was a lease that required competitive bidding).
Here, Amscot had no more than a license. At best, the amended licensing agreement stated that Amscot has the right to erect signs stating "Amscot Customer and Employee Parking" in the parking lot. However, this cannot overcome the clearly limited language of the amended licensing agreement that only authorized Amscot to "use" the parking spaces. In addition, despite being labelled "irrevocable", the license in this case by its clear terms is not permanent and either party can opt out. The fact that Amscot paid a substantial sum to use the parking spaces does not alter our analysis. To qualify as a true irrevocable license, Amscot needed to make a substantial investment in the property's improvement. See Dance v. Tatum, 629 So.2d 127, 128-29 (Fla. 1993). Here, the only evidence that Amscot invested in improving the property lies in a provision of the amended licensing agreement which states that "Amscot has contributed Two Thousand Two Hundred and No/100 Dollars ($ 2,200) for the repair and installation of fencing along the rear of the Land and Amscot's Land" and testimony that Amscot constructed a walkway between the properties. This was hardly a substantial investment, especially compared to the $ 200,000 Nazia allegedly spent on construction.
We also agree with Nazia's argument that this temporary injunction improperly alters the status quo. In its *707 current form, the temporary injunction instructs Nazia to return the parking lot to its "original condition." Read in context, the phrase "original condition" almost certainly refers to the parking lot's condition under which Amscot's customers and employees used the parking lot prior to construction in light of the temporary injunction's command to "restore AMSCOT to its parking rights under the License within thirty (30) days." However, this instruction would not preserve the status quo. From a review of the record, construction began as early as January 2018. This would mean that Amscot waited up to six months before providing Nazia with its formal notice and demand to cease construction in June 2018. Therefore, forcing Nazia to remove its construction would not preserve the status quo because peace may have existed between the parties for up to six months before any conflict actually arose. See Chi. Title Ins. Agency of Lee Cty., 560 So.2d at 297. Further, forcing Nazia to return the parking lot to its original condition impermissibly grants Amscot the full relief it requested, bypassing the procedures required for a permanent injunction. See Vetter, 863 So.2d at 470.
For the foregoing reasons we reverse this order granting Amscott a temporary injunction.
REVERSED.
EVANDER, C.J. and LAMBERT, J., concur.