IN THE DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FIFTH DISTRICT

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED


RUSSEL VESSELS, JR AND COAST
TO COAST TERRAZZO, LLC,

      Appellants,

 v.

DR. TERRAZZO OF FLORIDA,
LLC D/B/A DR. TERRAZZO,

      Appellee.

_____/

Case No.    5D22-879
LT Case No. 2021-CA-048410

Opinion filed December 22, 2022

Nonfinal Appeal from the Circuit
Court for Brevard County,
David Dugan, Judge.

Adrienne E. Trent, of Adrienne E.
Trent, P.A., Rockledge, for Appellant.

Joe M. Mitchell, III, of Mitchell Law
Firm, P.A., Indialantic, for Appellee.

WALLIS, J.

      Russell Vessels, Jr., individually, and Coast to Coast Terrazzo, LLC

(collectively Appellants) appeal the preliminary injunction entered by the trial

court in favor of Dr. Terrazzo of Florida, LLC (Appellee), enforcing a non-compete agreement (the Agreement).[1]  Although Appellants argue that the trial court erred in several respects in enforcing the Agreement, the central issue in this appeal is whether Appellee proved that the injunction enforcing the restrictive covenants contained in the agreement was necessary to protect a legitimate business interest.  Appellants argue that the knowledge that Vessels gained while employed by Appellee is neither extraordinary nor specialized, not worthy of protection by the covenant, and merely an attempt to prevent ordinary competition.  We agree that Appellee did not prove the existence of a legitimate business interest; and, therefore, we reverse the injunction.

Vessels began working for Appellee on August 28, 2019, performing terrazzo restoration in Central Florida.  Prior to his employment with Appellee, Vessels had no experience in the process of terrazzo restoration.  Vessels began his employment as a laborer/trainee receiving general instructions from one of Appellee's employees, who initially was Vessels's supervisor (Supervisor), on the basics of terrazzo restoration.  Vessels was promoted to the position of general foreman within one year of working there.  During the course of this employment, the parties entered into the Agreement, which

_____

[1] We have jurisdiction.  See Fla. R. App. P. 9.130(a)(3)(B).

2

prohibited Vessels from working for a competing company for a period of three years after Vessels's employment with Appellee terminated. In late December 2020, Vessels left his employment with Appellee; and, in April 2021, he opened Coast to Coast, LLC, which also provides terrazzo restoration in Central Florida.

Ultimately, Appellee filed a two-count complaint against Appellants for temporary injunctive relief and breach of contract. Included in the request for injunctive relief were allegations that terrazzo servicing is a "specialized business which requires specialized tools, knowledge, and marketing" and that employees "learn specialized knowledge" when trained by Appellee that is not otherwise known to the general public.

During the injunction hearing, there was testimony establishing that Vessels chose to sharpen his terrazzo restoration skills and processes by conducting his own research on YouTube, which helped him enhance the restoration process and properly grind the floors prior to polishing them. In addition, the parties agreed that, during Vessels's employment, Appellee neither paid for additional training nor provided written materials instructing Vessels on how to perform terrazzo restoration. Instead, Vessels learned the basics of terrazzo restoration from Supervisor; and, when he had questions about a job, he was able to talk to Appellee's owner, who had been

3

in the terrazzo restoration business for many years. Additionally, the parties agreed that all of the equipment and materials needed to perform the restoration work are available for purchase commercially. Finally, the parties admitted that Appellee never developed any proprietary processes to perform restorations.

The trial court entered the preliminary injunction in favor of Appellee and against Appellants. The court found that terrazzo restoration requires specialized skill and training and that Vessels acquired a great deal of knowledge regarding the repair and restoration of terrazzo floors during his employment with Appellee. It further found that Appellee proved a legitimate business interest worthy of being protected by the injunction, without an adequate remedy being available at law for Appellee.

In an action to enforce an agreement that restricts or prohibits competition during or after the term of restrictive covenants, such as the one before us:

> (b) The person seeking enforcement of a restrictive covenant shall plead and prove the existence of one or more legitimate business interests justifying the restrictive covenant. The term "legitimate business interest" includes, but is not limited to:
>
> 1. Trade secrets, as defined in s. 688.002(4).

4

2. Valuable confidential business or professional information that otherwise does not qualify as trade secrets.

3. Substantial relationships with specific prospective or existing customers, patients, or clients.

4. Customer, patient, or client goodwill associated with:

>a. An ongoing business or professional practice, by way of trade name, trademark, service mark, or "trade dress";

>b. A specific geographic location; or

>c. A specific marketing or trade area.

5. Extraordinary or specialized training.

Any restrictive covenant not supported by a legitimate business interest is unlawful and is void and unenforceable.

§ 542.335(1)(b), Fla. Stat. (2021).

Although the trial court here did not specifically identify the legitimate business interest under this statute on which it based or issued its preliminary injunction, the allegations in the complaint, the language used by the court when making its factual findings, and counsels' arguments in this appeal suggest that Appellee's legitimate business interest being protected was that Vessels received extraordinary or specialized training.

"In order for training to be a protectible business interest, it must be extraordinary." Dyer v. Pioneer Concepts, Inc., 667 So. 2d 961, 964 (Fla. 2d DCA 1996). Extraordinary training has been described as

> that which goes beyond what is usual, regular, common, or customary in the industry in which the employee is employed. The rationale is that if an employer dedicates time and money to the extraordinary training and education of an employee, whereby the employee attains a unique skill or an enhanced degree of sophistication in an existing skill, then it is unfair to permit that employee to use those skills to the benefit of a competitor when the employee has contracted not to do so. The precise degree of training or education which rises to the level of a protectible interest will vary from industry to industry and is a factual determination to be made by the trial court. Needless to say, skills which may be acquired by following the directions in the box or learned by a person of ordinary education by reading a manual do not meet the test.

Hapney v. Cent. Garage, Inc., 579 So. 2d 127, 132 (Fla. 2d DCA 1991), disapproved of on other grounds by Gupton v. Vill. Key & Saw Shop, Inc., 656 So. 2d 475 (Fla. 1995). Based on the above definition, the Hapney court concluded that Hapney did not receive extraordinary training because the training provided for him merely "extended his air-conditioning installation and repair skills to include cruise control units and cellular telephones." Id.

Similarly, in Dyer, the Second District Court concluded that an employer did not have a protectible business interest due to specialized

6

training where the evidence showed that Dyer received training in stripping floors and the use of equipment leased to grocery stores. 667 So. 2d at 964. Dyer was also trained by attending seminars on development of interpersonal skills, hiring and firing techniques, and repairing equipment. Id. The Dyer court concluded that this type of training was not extraordinary for purposes of section 542.335 and, therefore, the employer did not have a legitimate business interest to protect. Id.

In this case, Vessels learned the basics of terrazzo restoration through Supervisor. And while the evidence below shows that Appellee's owner has a great deal of knowledge about terrazzo restoration, the evidence, even when construed in a light most favorable to Appellee, established that Vessels received on-the-job training that was "usual, regular, common or customary in the industry," which does not qualify as extraordinary or specialized training under section 542.335(1)(b)5. See Dyer, 667 So. 2d at 964; Hapney, 579 So. 2d at 132. Therefore, because the evidence did not support that Appellee provided Vessels with specialized or extraordinary training, it was error for the trial court to conclude that Appellee had a legitimate business interest and that the Agreement was enforceable. See

7

§ 542.335(1)(b), Fla. Stat.; <u>Dyer</u>, 667 So. 2d at 964–65; <u>Hapney</u>, 579 So. 2d at 134.  Accordingly, we reverse the preliminary injunction.[2]

REVERSED.

LAMBERT, C.J., and EVANDER, J., concur.

---

[2] Because Appellee failed to prove the existence of a legitimate business interest, we do not reach the merits of Appellants' other arguments on appeal.