883 So.2d 309 (2004)
Terry W. MORGAN, Appellant,
v.
HERFF JONES, INC., Appellee.
No. 2D04-1109.
District Court of Appeal of Florida, Second District.
August 25, 2004.
*310 Gregory T. Elliott of Elliott-Berger, P.A., St. Petersburg, for Appellant.
Joshua Magidson of Macfarlane Ferguson & McMullen, Clearwater; and Susan W. Fox of Fox & Loquasto, P.A., Tampa, for Appellee.
*311 COVINGTON, Judge.
Terry Morgan challenges the circuit court's order restraining him from competing with Herff Jones, Inc., or its designated agent, Timothy Trojnar, or using the trade name Delmar Studios. We reverse the temporary injunction as to the noncompete covenant but affirm the injunction against use of the trade name. Because the court failed to conduct an evidentiary hearing on the amount of the bond, Morgan's damages for a wrongful injunction are not limited by the amount of the bond.
Herff Jones ("HJ") sells photographic services and products to schools through independent contractors such as Terry Morgan. Morgan and HJ executed a Photography Agreement on July 5, 2001, by which Morgan agreed to exclusively sell and process HJ's products in certain West Florida schools. The term of the agreement was indefinite. Either party could terminate it upon sixty days' notice, and HJ could immediately terminate it upon Morgan's breach of the terms of the agreement, malfeasance, or insolvency. Upon termination, any balance owed HJ would become immediately due and payable. Morgan also agreed that upon termination he would immediately and permanently cease to use the name Delmar Studios and return to HJ its samples and other property.
By agreement the same date, Timothy Trojnar, Morgan's predecessor, acknowledged that his agreement with HJ terminated as of July 5, 2001; ratified all of the provisions of paragraph 10, including the noncompete covenant; and referenced an asset purchase agreement executed the same date between Trojnar and Morgan.
The Photography Agreement established a representative's account or sweep account into which Morgan was to deposit all of his receipts and from which HJ would deduct its product and processing costs and loans to provide Morgan working capital. HJ's representative testified that to his knowledge Morgan paid every penny of his receipts into the sweep account until the termination date.
HJ held a first right and option to purchase or to designate a purchaser to replace Morgan. Paragraph 10 provided that the option to purchase included the business, the representative's services to implement the purchase, and a noncompete covenant as set forth in paragraph 10.02. If HJ did not exercise the option to purchase or designate a purchaser who then purchased the business, the agreement expressly provided that the noncompete covenant did not apply and Morgan could compete with HJ. Upon receipt of written notice to terminate the agreement, HJ had sixty days in which to exercise its option to purchase.
As consideration for the sale of the business, the representative's services in facilitating the sale, and the noncompete covenant, Morgan agreed to pay Trojnar 50 percent of the gross profits, defined in the agreement as territory splits, for three consecutive fiscal years. The agreement described gross profits as the collected funds less state sales and use taxes, commissions actually paid to customers (schools), and HJ's product and processing costs. During the two years the agreement between Morgan and HJ was in force, HJ paid over $750,000 in territory splits to Trojnar from the sweep account.
The noncompete covenant in paragraph 10.02 provides that the former representative:
will not compete, directly or indirectly (nor receive, in any form, benefit from a competitor of HJ) in the Territory against HJ, any of its sales representatives, employees or other authorized agents ... by selling, marketing, manufacturing, *312 creating, servicing, leasing or purchasing Products ... in the Territory during the period of time Representative shall receive Territory Splits and for a period of one year thereafter.
The term "compete" includes servicing accounts, soliciting sales from customers, supervision of sales, recommendation of suppliers of products other than HJ, or in any manner contributing to the diminution of HJ's goodwill with customers.
About two years after Morgan and HJ executed the agreement, Morgan received a letter from HJ itemizing a total of $946,720.18 that he allegedly owed it, including $752,020.06 paid to Trojnar as the territory purchase balance. The total included an accounts receivable balance of $178,370.56 and an equipment note balance of $16,329.56. HJ notified Morgan by letter dated August 26, 2003, that it was terminating his agreement effective immediately for "breach of the terms of our agreement and other violations of duties." HJ added that it elected to exercise its first right to purchase and designated Trojnar as the replacement representative. The letter advised that $946,720.18 was immediately due and payable and requested that Morgan cooperate in returning all of HJ's samples and property.
Morgan refused to cooperate with HJ. He disputed any debt to HJ based on territory splits it had paid Trojnar and contended that HJ had no right to a noncompete covenant unless it or its designee purchased his business. At no time did he receive an offer or any communication that HJ or Trojnar intended to purchase his business.
HJ filed suit, alleging Morgan's breach of contract for failing to use his best efforts required under paragraph 5.01, misfeasance under paragraph 3.02 of the agreement, and replevin. At the replevin hearing on September 29, 2003, the court heard HJ's allegations that Morgan did not use his best efforts in selling the product, failed to regularly contact customers, and was losing business dramatically commencing in the summer of 2003. Morgan responded that Trojnar was in violation of his noncompete agreement for which he had received substantial territory splits. Morgan provided the court with an affidavit from another individual to support his claim that Trojnar violated the noncompete agreement. The court granted the writ of replevin.
HJ amended its complaint in November 2003 to again allege breach of contract and replevin and to add counts for a temporary injunction to enforce the noncompete covenant and to enjoin Morgan's use of the Delmar Studios trade name. Morgan filed a motion to dismiss the amended complaint and to strike certain claims, but at the time of the entry of the order on appeal, the court had not ruled on the motion to dismiss. Morgan had not yet filed any answer or counterclaim.
The court conducted evidentiary hearings on HJ's motion for a temporary injunction. Much of the testimony was a prelude to the eventual trial; evidence not pertinent to determine the existence of the noncompete covenant and subject to further litigation is not detailed. Suffice it to say, considerable dispute exists whether the territory splits paid to Trojnar constitute any part of amounts ultimately due HJ. During the hearing, Morgan's counsel indicated to the court that in two weeks Morgan would change the name of his business because it tended to confuse. Morgan's counsel explained that he was not stipulating to a trade name injunction for the express reason that the court had to make specific findings that might affect future litigation.
*313 To the extent an injunction rests on factual matters, the injunction lies within the sound discretion of the court and will be affirmed absent a showing of abuse of discretion. Smith v. Coalition to Reduce Class Size, 827 So.2d 959, 961 (Fla. 2002). However, to the extent it rests on purely legal matters, the order is subject to full, de novo review on appeal. Id.; Kaplan v. Bayer, 782 So.2d 417, 419 (Fla. 2d DCA 2001). The general function of a temporary injunction is to preserve the status quo until full relief can be granted in a final hearing. Liberty Fin. Mortgage Corp. v. Clampitt, 667 So.2d 880, 881 (Fla. 2d DCA 1996). It should be granted only sparingly and only after the moving party has alleged and proved facts entitling it to relief. Id. A court must interpret a contract as a matter of law. Paoli v. Natherson & Co., P.A., 750 So.2d 46 (Fla. 2d DCA 1999). When the terms of a contract are clear and unambiguous, the contracting parties are bound by those terms. Emergency Assocs. of Tampa, P.A. v. Sassano, 664 So.2d 1000 (Fla. 2d DCA 1995). Here, the question whether a noncompete covenant arose under the contract is subject to de novo review.
This noncompete covenant is not a typical noncompete clause that arises upon mere termination of employment. Instead, after Morgan's termination, it is triggered by HJ's or its designee's exercise of the option to purchase the business. Although HJ purported to elect the option to designate Trojnar as the purchaser of the business, neither he nor HJ purchased it or ever offered in good faith to do so. The plain meaning of the contract requires a purchase in order for an enforceable covenant not to compete to arise. HJ designated Trojnar as the successor representative and purchaser, but it is undisputed that no purchase occurred. In fact, the agreement provided that after written notice to terminate the agreement, HJ had sixty days in which to execute its option to purchase. In contrast, in 2001, the same parties executed agreements for Morgan's purchase and Trojnar's sale and agreement not to compete. HJ suggests its election is self-executing; however, it is not the election, but the exercise of the option to purchase that triggers the noncompete covenant. The condition precedent did not occur, and, therefore, the noncompete clause did not become effective. According to the agreement, then, Morgan may compete with HJ. We thus reverse the temporary injunction not to compete.
On the other hand, we affirm the injunction's restraint on Morgan's use of the trade name Delmar Studios. HJ proved and Morgan admitted that he was using the name. He agreed to stop using the name in two weeks' time due to admitted confusion.
We also find merit to Morgan's argument concerning the bond. Despite HJ's counsel's suggestion that a bond be set at $500, the court disagreed and set the bond amount at $5000. Morgan's counsel wrote the court a lengthy letter including criticism of the proposed findings and the need for an evidentiary hearing to determine the amount of the bond. The court did not honor Morgan's request for a hearing to present evidence on the sufficiency of the bond. Accordingly, any damages for the wrongful injunction will not be limited to the amount of the bond HJ posted. See Advantage Digital Sys., Inc. v. Digital Imaging Servs., Inc., 870 So.2d 111, 116-17 (Fla. 2d DCA 2003).
When a court initially sets an injunction bond, the amount of the bond should constitute the court's determination of the amount of the foreseeable damages for a wrongful injunction. Lotenfoe v. *314 Pahk, 747 So.2d 422, 425 (Fla. 2d DCA 1999). See also Parker Tampa Two, Inc. v. Somerset Dev. Corp., 544 So.2d 1018, 1021 (Fla.1989); Flickenger v. R.J. Fitzgerald & Co., 732 So.2d 33, 35 (Fla. 2d DCA 1999). Upon remand, Morgan's damages for the wrongful injunction are not limited by the erroneously set bond. See Lotenfoe, 747 So.2d at 426.
Affirmed in part, reversed in part, and remanded for further proceedings.
CASANUEVA and WALLACE, JJ., concur.