908 So.2d 609 (2005)
COASTAL LOADING, INC., Brett Williamson, and Carolyn Williamson, Appellants,
v.
TILE ROOF LOADING, INC., Appellee.
No. 2D04-5702.
District Court of Appeal of Florida, Second District.
August 19, 2005.
*610 Michael D. Randolph of Simpson, Henderson, Carta & Randolph, Fort Myers, for Appellants.
Theodore L. Tripp, Jr. and Kevin P. Fularczyk of Garvin & Tripp, P.A., Fort Myers, for Appellee.
SILBERMAN, Judge.
Coastal Loading, Inc. (the Seller), and its principals, Brett Williamson and Carolyn Williamson, appeal a nonfinal order granting a temporary injunction in favor of Tile Roof Loading, Inc. (the Buyer), based on a noncompetition agreement. We affirm the temporary injunction to the extent that it prohibits the Seller and the Williamsons from using the name Coastal Loading, reverse the remainder of the temporary injunction, and remand for further proceedings.
In October 2003, Matthew Garcia and Lucinda Burke began negotiating the terms of an asset sale and purchase agreement with the Seller. On January 12, 2004, Mr. Garcia and the Seller entered into a Business Asset Sale and Purchase Agreement (the Asset Purchase Agreement). *611 The Asset Purchase Agreement states that Mr. Garcia or his assigns would purchase "all of SELLER'S assets and properties pertaining to the business known as Coastal Loading, Inc.[,]" including the name of the business. The Asset Purchase Agreement also provides that the Seller and its stockholders "shall agree at the closing not to compete with the business being sold" and that "Brett Williamson shall agree to not compete in the same business terms as SELLER." This document does not further describe the business being sold.
The closing occurred in March 2004 between the Seller and the Buyer as Mr. Garcia's assignee. As part of the closing, the Seller and the Williamsons entered into an Agreement Not To Compete (the Noncompete Agreement) with the Buyer. The Noncompete Agreement specifies that the Seller and the Williamsons agree not to engage in the business of "roof tile loading" for five years in the State of Florida.
The Buyer subsequently learned that Brett Williamson had hauled roof tiles in Florida for D. Peck Roofing, Inc., after the closing. The record evidence established that Dave Peck, of D. Peck Roofing, Inc., had contacted Mr. Williamson and requested his services. The Buyer filed suit against the Seller and the Williamsons, seeking injunctive relief in count I for breach of the Noncompete Agreement and seeking damages in count II for breach of the Asset Purchase Agreement.
After a hearing on the Buyer's motion for temporary injunctive relief, the trial court entered an order enjoining the Seller and the Williamsons from (1) "engaging in the truck hauling business related to the transportation or installation of roof tiles in the State of Florida"; (2) "contacting, or transacting business related to the hauling and placement of roof tiles for customers of the Plaintiff, including but not limited to those customers identified on the Customer Contact List dated December 3, 2003"; and (3) "any use of the name Coastal Loading in connection with any business enterprise."

COVENANT NOT TO COMPETE
The Seller and the Williamsons argue that the Noncompete Agreement only prohibits "roof tile loading" and not "roof tile hauling." Thus, they contend that the trial court erred in enjoining them from hauling roof tiles.
The Buyer responds that the pertinent documents, including the Asset Purchase Agreement, the Bill of Sale, and the Customer Contact List, together with the testimony of Matthew Garcia and Lucinda Burke, reflect the intent of the parties with respect to the restrictive covenant ultimately memorialized in the Noncompete Agreement. The Buyer argues that the parties intended to include both hauling and loading of roof tiles in the sale of the business and as part of the covenant not to compete even though the covenant only specified roof tile loading. Thus, the Buyer contends that the trial court properly concluded that the Seller and the Williamsons were prohibited from both hauling and loading roof tiles.
This court has noted "that although the interpretation of a covenant not to compete is a matter of law to be resolved by a trial court, an appellate court is nevertheless empowered to undertake an independent assessment of the covenant's meaning." Emergency Assocs. of Tampa, P.A. v. Sassano, 664 So.2d 1000, 1002 (Fla. 2d DCA 1995); see also Morgan v. Herff Jones, Inc., 883 So.2d 309, 313 (Fla. 2d DCA 2004) (stating that the issue of "whether a noncompete covenant arose under the contract is subject to de novo review"). Thus, *612 we conduct a de novo review of the interpretation of the covenant not to compete.
"When the terms of a contract are clear and unambiguous, the contracting parties are bound by those terms." Morgan, 883 So.2d at 313 (citing Emergency Assocs., 664 So.2d 1000). It is clear from the record that the parties understood that roof tile hauling and roof tile loading were two separate aspects of the Seller's business. In fact, Matthew Garcia and Lucinda Burke recognized that hauling roof tiles from the manufacturer to the construction site and loading of roof tiles from the ground to the roof of a building were different services that were often provided separately. The phrase "roof tile loading," which is contained in the Noncompete Agreement, is unambiguous, and that term, even when considered in the context of the other documents and the record evidence, does not include the hauling of roof tiles from the manufacturer to the construction site.
The Asset Purchase Agreement reflects that at closing, the parties would enter into a separate agreement not to compete. The Noncompete Agreement, as drafted, contained a blank line for insertion of the description of the business in which the Seller and the Williamsons would not engage. The record reflects that in conjunction with the closing, the parties negotiated and specifically agreed to the words that were handwritten on the blank line. The signed document restricts the Seller and the Williamsons from engaging in "roof tile loading." Significantly, the Noncompete Agreement also contains an integration clause that states: "This agreement constitutes the entire agreement and understanding between the parties with respect to any covenant or agreement not to compete, not to solicit customers and not to disclose trade secrets and cannot be modified except in writing signed by the party to be charged." Nothing in the record suggests that the parties entered into a written modification of the Noncompete Agreement. Thus, in conjunction with the closing, the parties reached a specific, written agreement as to the scope of the restriction, and the Noncompete Agreement makes no mention of roof tile hauling as being part of the restriction. See § 542.335(1)(a), Fla. Stat. (2003) ("A court shall not enforce a restrictive covenant unless it is set forth in writing signed by the person against whom enforcement is sought.").
The Asset Purchase Agreement contemplated that a covenant not to compete would be required as part of the closing. The Asset Purchase Agreement did not prevent the parties from further negotiating, as they did, the exact language to be used in the covenant not to compete. Because the covenant not to compete that is contained in the Noncompete Agreement only restricts the Seller and the Williamsons from engaging in the business of roof tile loading, which is distinct from the business of roof tile hauling, the trial court erred in entering a temporary injunction that prohibited roof tile hauling.

COVENANT NOT TO SOLICIT
The covenant not to solicit provides that the Seller and the Williamsons "shall not (1) call on or solicit ... customers of Seller on whom they called, with whom they became acquainted, or of whom they learned during its operation of the Business[.]" The evidence established that sometime after the closing, Dave Peck, a customer of Coastal Loading, called and asked Mr. Williamson to haul roof tile. Because the evidence did not establish that Mr. Williamson called on or solicited the customer, he did not breach the covenant not to solicit. See Advantage Digital Sys., Inc. v. Digital Imaging Servs., Inc., 870 So.2d 111, 115 (Fla. 2d DCA 2003) (recognizing *613 that if the employer's customer approaches former employees, "that is not solicitation").
In the order, the trial court enjoined the Seller and the Williamsons "from contacting, or transacting business related to the hauling and placement of roof tiles for customers of the Plaintiff[.]" Apart from the fact that there was no evidence that Mr. Williamson called on or solicited any former customers, the injunction goes beyond the covenant not to solicit contained in the Noncompete Agreement by prohibiting the Williamsons from "transacting business" with those customers. See id. at 114-15 (determining that injunction prohibiting contact with customers was beyond scope of the covenant that prohibited only solicitation).

USE OF BUSINESS NAME
The temporary injunction also prohibited the Seller and the Williamsons from using the name "Coastal Loading." Because they have not specifically argued on appeal that the trial court erred in granting injunctive relief as to use of the name, we affirm that portion of the temporary injunction.

CONCLUSION
We affirm the temporary injunction only to the extent that it prohibits the Seller and the Williamsons from using the name "Coastal Loading." In all other respects, we reverse the temporary injunction and remand for further proceedings on the Buyer's complaint.
Affirmed in part, reversed in part, and remanded.
NORTHCUTT, J., and THREADGILL, EDWARD F., Senior Judge, Concur.