ORFINGER, J.
 

 Environmental Services, Inc. (“ESI”) appeals a trial court order denying in part its application to temporarily enjoin three of its former employees, Ryan Carter, Daniel LeJeune and Devin Hannon (collectively “former employees”), and their current employer, Natural Resource Consultants, LLC (“NRC”), from violating certain restrictions contained in their confidentiality and non-solicitation agreements (“agreement”) with ESI. We affirm in part, reverse in part, and remand for further proceedings.
 

 ESI is an environmental consulting firm that works with property owners, builders and developers in connection with permitting and regulatory compliance. ESI analyzes data that it obtains through field assessments and aerial photography of its clients’ properties to identify issues concerning wetlands, protected habitats and protected species. The former employees were all employed at ESI’s St. Augustine office until late February 2008. Carter was the manager of ESI’s St. Augustine office, and supervised its employees, including LeJeune and Hannon. He also managed all client relationships in the office; had access to ESI’s confidential records, including financial records, client files, proposals, billing rates, employee salaries and marketing strategies; coordinated the office’s administrative activities; and oversaw personnel and training of staff. LeJeune was a senior project manager who also had access to ESI’s confidential files and trade secrets, including client files, proposals, billing rates and marketing strategies. LeJeune, like Carter who was just above him in the corporate hierarchy, represented clients before governmental agencies. Hannon was a senior graphics systems technician who engaged in marketing activities for ESI but typically had little client contact.
 

 Carter and Hannon both admitted that they signed the agreement. LeJeune admitted signing an agreement, but testified that he only “skimmed it” and could not recall its contents. ESI was unable to locate LeJeune’s agreement in its files, and could only produce the agreements signed by Carter and Hannon. Those agreements were identical. Robin Bullock, ESI’s human resources director, testified that ESI had only used one form of the agreement since 2005.
 

 According to LeJeune, beginning in October 2007 and continuing until February 2008, he, Carter and Hannon discussed leaving ESI and starting a new environmental consulting business. Between December 2007 and February 2008, Carter, while working for ESI, performed environmental work for LAN Associates (“LAN”), an engineering firm, and exchanged several e-mails with LAN officers. In these emails, Carter discussed ESI’s compensation rates and attached documents stamped “confidential” concerning compensation proposals for Carter, LeJeune, and Hannon. Carter also discussed LAN’s bonus program and LAN’s attorneys reviewed Carter’s agreement with ESI. Ultimately, LAN agreed to finance NRC, the new company created by the former employees, in exchange for a 63.88 percent ownership interest in NRC.
 

 ESI subsequently filed suit for injunc-tive relief, declaratory judgment, and damages against the former employees and NRC, alleging various violations of their agreements by performing services for ESI’s customers after they resigned, by retaining and utilizing ESI’s confidential and proprietary information in their new business, and by interfering with the rela
 
 *1261
 
 tionship between ESI and its employees. ESI then sought temporary injunctive relief (1) prohibiting the former employees from continuing to work for NRC, a subsidiary of LAN, a former ESI client; (2) prohibiting the former employees from directly or indirectly performing services for clients of ESI with whom the former employees had business-related contact while employed at ESI; (3) prohibiting the former employees from possessing, using or disclosing ESI’s confidential information including trade secrets; (4) requiring the former employees to produce their computers for inspection; and (5) prohibiting the former employees from interfering with the relationship between ESI and its employees, including attempting to hire away its employees.
 

 The trial court granted in part and denied in part ESI’s motion for temporary relief. The court declined to enforce any restrictive covenants against LeJeune because it could not determine the precise terms of the agreement due to ESI’s failure to produce an executed copy of the agreement. However, the court determined that as to Carter and Hannon, the agreement contained five restrictive covenants: non-competition, non-solicitation, confidentiality, surrender of employment documents upon termination of employment and prohibition on interference with other ESI employees’ employment. The court refused to enforce the non-compete clause against Carter and Hannon, concluding that the provision was invalid as it was hidden within a two-paragraph clause entitled “non-solicitation.” The trial court further held that the non-compete provision was invalid as it was not limited to a specific geographic area. While the court ruled that the non-solicitation covenant was valid, it refused to enforce that covenant, finding that ESI’s clients sought out Carter and Hannon without any solicitation from them. As to the confidentiality covenant, the court found that ESI was entitled to temporary injunctive relief. As a result, it prohibited Carter and Hannon from using or disclosing ESI’s confidential information and/or trade secrets, as well as ordered them to return all documents containing ESI’s confidential information to ESI. Finally, the court determined that the prohibition on interference with ESI’s employees was valid but found that ESI failed to prove its entitlement to temporary injunctive relief as the evidence revealed that Carter, Hannon and LeJeune did not entice each other to resign from ESI.
 

 We find no error with the court’s determination on the non-solicitation, confidentiality, surrender of employment documents upon termination of employment and prohibition on interference with other ESI employees’ employment provisions of the agreement. However, we reverse the court’s determination as to the non-compete provision and its refusal to enforce the agreement against LeJeune.
 

 In order to establish entitlement to temporary injunctive relief, a party must prove: (1) the likelihood of irreparable harm, (2) the unavailability of an adequate remedy at law, (3) a substantial likelihood of success on the merits, and (4) that a temporary injunction will serve the public interest.
 
 Yardley v. Albu,
 
 826 So.2d 467, 470 (Fla. 5th DCA 2002). The usual remedy in cases involving a valid covenant not to compete is injunctive relief since it is extremely difficult for a court to determine what damages are caused by breach of the covenant.
 
 Sentry Ins. v. Dunn,
 
 411 So.2d 336, 336 (Fla. 5th DCA 1982) (citing
 
 Miller Meek, Inc. v. Ruth,
 
 300 So.2d 11 (Fla.1974)).
 

 Post-employment restrictive covenant agreements are valid restraints of trade or commerce under certain condi
 
 *1262
 
 tions. Specifically, section 542.335, Florida Statutes (2005), which took effect on July 1, 1996, contains a comprehensive framework for analyzing, evaluating and enforcing restrictive covenants contained in employment contracts.
 
 Henao v. Prof'l Shoe Repair, Inc.,
 
 929 So.2d 723, 726 (Fla. 5th DCA 2006). A violation of an enforceable restrictive covenant creates a presumption of irreparable injury.
 
 Id.
 
 Section 542.335 employs the term “restrictive covenants” and includes all contractual restrictions such as noncompetition/nonsolicitation agreements, confidentiality agreements, exclusive dealing agreements, and all other contractual restraints of trade.
 
 Id.
 
 If valid, a restrictive covenant may be enforced by way of temporary and permanent in-junctive relief. § 542.335(l)(j), Fla. Stat. (2005).
 

 Section 542.335(1), Florida Statutes, permits enforcement of contracts that restrict or prohibit competition, but only “so long as such contracts are reasonable in time, area, and line of business....”
 
 [1]
 
 The statute also requires “that any restrictive covenant be set forth in a writing signed by the person against whom enforcement is sought, and that the restraint be shown to be reasonably necessary to protect a ‘legitimate business interests’ justifying the restriction.”
 
 Henao,
 
 929 So.2d at 726. A “legitimate business interest” includes “substantial relationships with specific prospective or existing customers ... or clients.” § 542.335(l)(b)3., Fla. Stat. (2005).
 
 [2]
 
 The party seeking enforcement of the non-compete agreement must present a prima facie case that the restrictions are reasonably necessary to protect its legitimate business interests. § 542.335(l)(c), Fla. Stat. (2005). The opposing party then has the burden of proving the contractual restraint is overbroad, overlong, or otherwise not reasonably necessary to support the restriction.
 
 Henao,
 
 929 So.2d at 726-27. If the restraint is overbroad or unreasonable, the court “shall modify the restraint and grant only the relief reasonably necessary to protect such [legitimate business] interest or interests.”
 
 Id.
 
 Section 542.335(l)(h), Florida Statutes (2005), directs that the court “shall construe a restrictive covenant in favor of providing reasonable protection to all legitimate business interests established by the person seeking enforcement,” and “shall not employ any rule of contract construction that requires the court to construe a restrictive covenant narrowly, against the restraint, or against the drafter of the contract.”
 
 [3]
 

 
 *1263
 

 ESFs Agreement
 

 We review the interpretation of a contract de novo.
 
 Steritech Group, Inc. v. MacKenzie,
 
 970 So.2d 895, 898 (Fla. 5th DCA 2007). “[Although the interpretation of a covenant not to compete is a matter of law to be resolved by a trial court, an appellate court is nevertheless empowered to undertake an independent assessment of the covenant’s meaning.”
 
 Coastal Loading, Inc. v. Tile Roof Loading, Inc.,
 
 908 So.2d 609, 611 (Fla. 2d DCA 2005) (citing
 
 Emergency
 
 Assocs.
 
 of Tampa, P.A. v. Sassano,
 
 664 So.2d 1000, 1002 (Fla. 2d DCA 1995)).
 

 In relevant part, the agreement prohibited:
 

 3.
 
 Non-Solicitation
 

 a. During the course of his/her employment with the Company, Employee shall devote to the Company all of his/her working time, attention, knowledge and skills, and shall not accept alternative employment or engage in any independent and/or separate business activity in the Company’s Field of Business.
 

 b. For a period of one (1) year after the termination of his/her employment for any reason whatsoever, Employee shall not, directly or indirectly, solicit business from or perform services for any current, former or prospective customers of the Company with whom Employee had any business-related contact (contact intended to advance the Company’s business interests) during his/her employment with the Company.
 

 ESI argues that the trial court erred in failing to enforce paragraph 3.b. of the agreement, which prohibited the former employees from “performing] services for any current, former or prospective customers of the Company with whom Employee had any business-related contact ... during his/her employment with the Company.”
 

 Restrictive covenants are valid if reasonable in time, area and line of business, set forth in a writing signed by the party against whom enforcement is sought, and the contractually specified restraint is supported by at least one legitimate business interest justifying the restraint, and reasonably necessary to protect that interest. § 542.335, Fla. Stat. (2005);
 
 Henao,
 
 929 So.2d at 726-27. As to Carter and Han-non, the writing requirement of paragraph 3.b. was clearly satisfied, and the non-compete language relates to a “legitimate business interest,” which includes “substantial relationships with specific prospective or existing customers ... or clients.” § 542.335(l)(b)3., Fla. Stat. (2005). Moreover, with respect to reasonableness in time, the language limits non-competition to one year, which is presumptively not unreasonable.
 
 See
 
 § 542.335(l)(d), Fla. Stat. (2005) (instructing that court “shall presume reasonable in time any restraint 6 months or less in duration and shall presume unreasonable in time any restraint more than 2 years in duration”). With regard to area, while the trial court correctly noted the absence of a geographical limitation in the non-compete provision, we believe the court misperceived the effect of that omission.
 

 The non-compete clause does not prohibit
 
 all
 
 competition by the former employees with ESI. Rather, it prohibits the former employees from performing services “for any current, former or prospective customers” of ESI “with whom the Employee had any business-related contact (contact intended to advance the Company’s business interests) during his/her employment with the Company.” Other than customers with whom the former employees had busi
 
 *1264
 
 ness contact while employed by ESI, they are free to compete with ESI in St. Augustine or elsewhere. This is not an instance where the covenant is being used as a tool simply to eliminate all competition.
 
 See generally Edwards v. Harris,
 
 964 So.2d 196 (Fla. 1st DCA 2007).
 

 Decisional law demonstrates that a relatively narrow restriction, such as the one here, is not invalid because it fails to contain a geographic limitation.
 
 See Health Care Fin. Enter., Inc. v. Levy,
 
 715 So.2d 341 (Fla. 4th DCA 1998) (reiterating that court is required to modify unreasonable geographic restriction rather than refuse to enforce non-compete agreement).
 
 But compare Joseph U. Moore, Inc. v. Neu,
 
 500 So.2d 561 (Fla. 2d DCA 1986) (holding that non-competition clause, which prohibited soliciting or accepting business of employer’s customers, not invalid because it failed to include geographic limitation, provided, on remand, court determines reasonable geographic limitation),
 
 and Sentry Ins. Co. v. Dunn,
 
 411 So.2d 336 (Fla. 5th DCA 1982) (upholding non-compete provision without remanding for reasonable geographic limitation since non-compete clause merely prohibited employee from soliciting previous customers for two years after employment termination but employee remained free to write insurance and serve any other customers).
 

 The trial court’s concern regarding the “hidden” nature of the non-compete language is also unpersuasive. The language employed in the agreement is clear and unambiguous. Under such circumstances, the contracting parties are bound by the contractual language.
 
 Coastal Loading,
 
 908 So.2d at 612;
 
 see Institutional & Supermarket Equip., Inc. v. C & S Refrigeration, Inc.,
 
 609 So.2d 66, 68 (Fla. 4th DCA 1992) (“Where words of a contract are clear and definite, they must be understood according to their ordinary meaning.”). Paragraph 3.b. of the agreement clearly prohibits ESI’s former employees from soliciting business
 
 or
 
 performing services for its current, former or prospective customers with whom the former employees had business-related contact as a direct result of their employment at ESI.
 
 [4]
 

 See Knight, Vale & Gregory v. McDaniel,
 
 37 Wash.App. 366, 680 P.2d 448 (1984) (upholding as reasonable and enforceable, non-compete covenant that restrained employees from performing accounting services during three-year period following their termination of employment for only those former clients of firm with whom employees came into contact as direct result of employment). As a result, the trial court was obligated by section 542.335(l)(h) to construe this provision “in favor of providing reasonable protection to all legitimate business interests” established by ESI.
 

 The former employees argue that equitable estoppel bars enforcement of the non-compete provision because ESI’s memorandum to employees, furnished contemporaneously with the agreement, described the confidentiality and non-solicitation provision as follows:
 

 The agreement basically asks that if you leave ESI you do not contact any of the clients you gained or made contact with while employed with ESI.... This does not mean that if you left ESI you could not work in your field it simply means you cannot contact any of your ESI clients within a one year time frame from the time you leave.
 

 
 *1265
 
 Significantly though, the agreement contains the following merger clause
 
 [5]
 
 :
 

 10.
 
 Binding Agreement
 

 This Agreement constitutes the complete agreement between the parties with respect to the subject matter contained herein and revokes and supersedes all prior or simultaneous representations, discussions, negotiations, and agreements, whether written or oral.
 

 Although the existence of a merger clause does not conclusively establish that the integration of the agreement is total, it is a highly persuasive statement that the parties intended the agreement to be totally integrated and generally works to prevent a party from introducing parol evidence to vary or contradict the written terms.
 
 See Jenkins v. Eckerd Corp.,
 
 913 So.2d 43, 53 (Fla. 1st DCA 2005). Here, the non-compete clause was clear and complete, and thereby, the merger clause precludes the consideration of other documents to vary the terms of the agreement.
 
 See id.
 

 Equally unavailing is the former employees’ argument that ESI failed to present sufficient evidence of a “legitimate business interest.” The former employees note that former clients are not included among the “legitimate business interests” protected by section 542.335(l)(b), which references “substantial relationships with specific prospective or existing customers.” We agree that the protection of former customers generally does not qualify as a legitimate business interest where no identifiable agreement exists with such customers establishing that they would return with future work.
 
 See generally Ethan Allen, Inc. v. Georgetown Manor, Inc.,
 
 647 So.2d 812 (Fla.1994) (holding that claim for tortious interference with business relationship would not lie for past customers where furniture business had no identifiable agreement with past customers that they would engage in future commerce with business). However, here, there was ample evidence that the former employees and their newly-created company, NRC, were performing work for specific existing ESI customers. In several instances, the former employees transferred many of their existing projects at ESI to NRC. These were clearly identified, active ESI customers, not transient, distant clientele.
 

 Still, relying on
 
 Shields v. Paving Stone Company, Inc.,
 
 796 So.2d 1267 (Fla. 4th DCA 2001), the former employees insist that ESI needed an exclusive relationship with its clients to enforce the non-compete provision, and that in the absence of such relationship, clients were free to take new projects to whatever environmental consulting firm they wished. Contrary to the former employees’ assertions,
 
 Shields
 
 does not hold that only exclusive relationships with clients are protected “legitimate business interests.” In that case, Shields appealed the entry of a temporary injunction, which enjoined him from contacting his former employer’s customer base going back several years. Many of these customers were not actually doing business with the former employer and evidence was presented that Shields had obtained business through an open bidding process after the former employer had been terminated from work. While the Fourth District found that the former employer had demonstrated a legitimate business inter
 
 *1266
 
 est in need of protection,
 
 i.e.
 
 its customer log, it found the temporary injunction was overly broad since the employer did not have exclusive relationships with any of its customers and information on its customers was readily obtainable through the yellow pages and trade subscriptions, and it had no control over contracts awarded through open bidding. As a result, the court ordered the injunction be modified to limit the prohibition on solicitation so that it did not include customers obtained through the open bidding process.
 
 Shields
 
 was not concerned with customers who, as here, were in the midst of active relationships with the former employer. Unlike the circumstances in
 
 Shields,
 
 ESI was attempting to protect established relationships with identifiable clients with whom it either had current projects or ongoing relationships.
 
 See Ins. Field Servs., Inc. v. White & White Inspection & Audit Serv., Inc.,
 
 384 So.2d 303 (Fla. 5th DCA 1980).
 

 The former employees maintain that the evidence established that ESI’s customers elected to end their relationship with ESI of their own accord and sought out NRC. As a result, the former employees argue that ESI lacked any legitimate business interest worthy of protection by way of enforcement of the non-compete clause. In
 
 Scarbrough v. Liberty National Life Insurance Co.,
 
 872 So.2d 283, 285 (Fla. 1st DCA 2004), the First District discussed the situation where former clients initiate contacts with employees at their new place of business, explaining that “solicitation” can include a transaction in which the employee was proactive, regardless of whether the customer or employee initiated the transaction. Here, Carter confirmed that he discussed his new business venture, NRC, with ESI clients. There was also ample evidence that Carter actively enticed existing customers away from ESI. More importantly, regardless of who initiated the contact, the agreements clearly prevent the former employees from “[performing] services for any current, former or prospective customers [ESI] with whom employer had any business-related contact (contact intended to advance the Company’s business interests) during his/her employment with the Company.”
 
 [6]
 
 Given that ESI established a “legitimate business interest” that justified the non-compete restriction, it must be presumed that it suffered irreparable injury, and it was the former employees’ responsibility to demonstrate the absence of irreparable injury, which they failed to do. § 542.335(l)(j),
 
 *1267
 
 Fla. Stat. (2005);
 
 see Variable Annuity Life Ins. Co. v. Hausinger,
 
 927 So.2d 243 (Fla. 2d DCA 2006) (holding that employer’s presentation of evidence as to its known financial losses did not rebut the statutory presumption of irreparable harm; harm presumed from breach also included potential damage to employer’s longstanding relationships with customers and protection of confidential client information). For these reasons, we conclude that the trial court erred in ruling that the non-eompete provision in paragraph 3.b. was unenforceable.
 

 The Lost Agreement
 

 Section 542.335(l)(a), Florida Statutes, provides that “[a] court shall not enforce a restrictive covenant unless it is set forth in a writing signed by the person against whom enforcement is sought.” While Lejeune admitted that he signed an agreement in August 2007, he could not recall its terms, and ESI was unable to produce the actual document or a copy of it. ESI argued that the document was lost and tried to establish its contents through Bullock, who testified that ESI had only used one form of the agreement since 2005. The trial court refused to enforce the agreement against Lejeune, finding:
 

 [ESI] failed to provide the Court an executed Agreement for Daniel Lejeune [sic]. Instead [ESI] provided the Court testimony that Lejeune was provided with the Agreement during his employment with ESI and that execution of the agreement was a condition of employment. Further, Lejeune testified that he signed a non-solicitation agreement while employed with ESI. However, Le-jeune testified that he was unsure as to the terms of that agreement. § 542.335 provides: “A court shall not enforce a restrictive covenant unless it is set forth in a writing signed by the person against whom enforcement is sought.”
 
 Fla. Stat.
 
 § 542.335(l)(b). Defendant Le-jeune clearly opposed the Agreement’s enforcement against him. Without a copy of an executed Agreement, the Court is unable to enforce the restrictive covenants contained therein against the particular defendant as the Court is unable to determine the precise terms and validity of the terms.
 

 On appeal, ESI argues that as the written executed agreement was lost, the trial court should have allowed it to establish the contents of the agreement pursuant to section 90.954, Florida Statutes (2005).
 

 Section 90.954(1), Florida Statutes (2008), provides,
 
 inter alia,
 
 that the original of a writing is not required and other evidence of its contents is admissible when “all originals are lost or destroyed, unless the proponent lost or destroyed them in bad faith.” Florida law expressly permits the introduction of parol evidence to prove the contents of a contract where the proponent provides a satisfactory explanation that the original contract was lost or destroyed. § 90.954(3), Fla. Stat. (2008);
 
 Ins. Co. of State of Pa. v. Genova Exp. Lines, Inc.,
 
 605 So.2d 941, 942-43 (Fla. 3d DCA 1992). As a general rule, the loss or unintentional destruction of a written document does not affect the validity of the transaction of which it is the evidence, or the rights and liabilities of the parties to the instrument. 35 Fla. Jur.2d
 
 Lost & Destroyed Instruments & Records
 
 § 4 (2009). While it would be preferable to reestablish the written instrument in the manner authorized by section 71.011, Florida Statutes (2008), the failure to do so is not fatal to ESI’s attempt to enforce the agreement against Lejeune, provided that the trial court is satisfied as to its essential terms.
 
 O’Donovan v. Citibank FSB,
 
 710 So.2d 654, 655 (Fla. 3d DCA 1998);
 
 Gutierrez v. Bermudez,
 
 540 So.2d 888, 891 (Fla. 5th DCA 1989).
 

 
 *1268
 
 On remand, if the essential terms of the written agreement are established to the satisfaction of the trial court, it should be enforced against LeJeune in the same manner as against the other defendants.
 
 See O’Neal v. Bolling,
 
 409 So.2d 1171, 1172 n. 1 (Fla. 3d DCA 1982) (noting that while manual reproduction of documents were not duplicates, on remand, trial court could allow party to establish contents of documents under section 90.954);
 
 Action Fire Safety Equip., Inc. v. Biscayne Fire Equip. Co.,
 
 383 So.2d 969 (Fla. 3d DCA 1980) (holding that form non-compete agreement was properly admitted in enforcement action where employer established only one agreement was utilized and employee’s signature on agreement was witnessed and original was within control of adverse party).
 

 We find no merit in the remaining issues raised by ESI. The order is affirmed in part, reversed in part and remanded for further proceedings consistent herewith.
 

 AFFIRMED in part; REVERSED in part; and REMANDED.
 

 MONACO and COHEN, JJ., concur.
 

 [1]
 

 . By contrast, the previous version provided that, except to the extent authorized in section 542.33(2) and (3), all restraints of trade were illegal and unenforceable.
 
 See
 
 § 542.33(1), Fla. Stat. (1995). Given this significant change in approach, decisional law construing restrictive covenants in employment agreements executed prior to 1996 must be carefully scrutinized to determine whether it comports with the terms of the current section 542.335.
 

 [2]
 

 . Other “legitimate business interests’’ under section 542.335(l)(b) include trade secrets, valuable confidential business and professional information that otherwise does not qualify as trade secrets, and customer, patient or client goodwill, which includes “extraordinary or specialized training.”
 

 [3]
 

 .The courts also recognize that the public has an interest in the enforcement of valid restrictive covenants.
 
 N. Am. Prods. Corp. v. Moore,
 
 196 F.Supp.2d 1217, 1231-32 (M.D.Fla.2002) (recognizing that section 542.335 sharply limits use of 'contrary to public policy' defense to enforcement of restrictive covenant, and observing that court may not refuse enforcement on grounds of public policy unless it articulates public policy with specificity and finds that specified public policy requirements substantially outweigh need to protect interest established by proponent of restriction).
 

 [4]
 

 .
 
 Failure of the former employees to adequately read and understand the terms of the confidentiality and non-solicitation agreements does not constitute a valid defense to enforcement of such agreements.
 
 See Merrill, Lynch, Pierce, Fenner & Smith, Inc. v. Benton,
 
 467 So.2d 311 (Fla. 5th DCA 1985).
 

 [5]
 

 . A merger or integration clause is "[a] contractual provision stating that the contract represents the parties' complete and final agreement and supersedes all informal understandings and oral agreements relating to tire subject matter of the contract.”
 
 Jenkins v. Eckerd Corp.,
 
 913 So.2d 43, 53 n. 1 (Fla. 1st DCA 2005) (quoting Black's Law Dictionary 813 (7th ed. 1999)).
 

 [6]
 

 . We note that the former employee's reliance on
 
 Kephart v. Hair Returns, Inc., 685
 
 So.2d 959 (Fla. 4th DCA 1996), is misplaced. In
 
 Kephart,
 
 the employee, a hair replacement technician, signed an agreement with her employer containing a non-compete clause, which specifically prohibited her from servicing the employer’s customers for one year following termination of employment. Following her termination, the employee began working for a competitor and servicing her former employer's customers. The employee admitted servicing these customers but only because they sought her out. The appellate court reversed the temporary injunction, explaining the then-applicable statute, section 542.33, Florida Statutes (1995), did not prohibit servicing customers who voluntarily follow an employee to his/her new place of employment, and there was no finding that the former employee directly solicited the customers or used her former employer’s trade secrets or customer lists. As a result, the court concluded that there was no irreparable harm and determined that the injunction was issued in error. Unlike our present case,
 
 Kep-hart:
 
 (1) involved application of the earlier statute (section 542.33) governing restrictive covenants, which operated from the premise that all restraints of trade were illegal and unenforceable other than the exceptions contained in the statute; (2) did not involve trade secrets or confidential business information and their misappropriation by the employee; and (3) concerned whether solicitation occurred, not enforcement of a restriction against performing services for former clients.