PER CURIAM.
Michael Evans, Andrew Chinn and X-Tech International; LLC, defendants below, timely appeal an order granting, in part, and denying, in part, a motion for temporary injunction filed by Generic Solution Engineering, LLC d/b/a Tech Guys Who Get Marketing (hereinafter “Tech Guys”), plaintiff, below. The order denied Tech Guys’ motion as to Michael Evans,[1] but granted temporary injunctive relief to Tech Guys against Andrew Chinn and X-Tech (which is owned by Evans and Chinn), prohibiting-them “from doing business with [Robbins Research International, LLC (“RRI”)], E-Data or . any other customers of [Tech Guys] for the, next 14 months” based upon a restrictive covenant in a contract between Tech Guys and Chinn. Because Tech Guys did not pres *116 ent sufficient evidence to demonstrate that enforcement of the restrictive covenant was necessary to protect Tech Guys’ “legitimate business interests,” as required by Florida law, we find that it failed to demonstrate a substantial likelihood of success on the merits and reverse the trial court’s order.

Relevant Law

“Section 542.335(1), Florida Statutes, permits enforcement of contracts that restrict or prohibit competition, but only ‘so long as such contracts are reasonable in time, area, and line of business ...’ ” Envtl. Servs., Inc. v. Carter, 9 So.3d 1258, 1261 (Fla. 5th DCA 2009). The statute also requires “that the restrictive covenant be set forth in a writing signed by the person against whom enforcement is sought, and that the restraint be shown to be reasonably necessary to protect the ‘legitimate business interests’ justifying the restriction.” Henao v. Prof'l Shoe Repair, Inc., 929 So.2d 723, 726 (Fla. 5th DCA 2006). “[Legitimate business interest[s]” include “[s]ub-stantial relationships with specific prospective or existing customers ... or clients.” § 542.335(1)(b)3., Fla. Stat. (2014). As such, “ ‘the right to prohibit the direct solicitation of existing customers’ is a legitimate business interest....” Hilb Rogal & Hobbs of Fla., Inc. v. Grimmel, 48 So.3d 957, 961 (Fla. 4th DCA 2010) (quoting Atomic Tattoos, LLC v. Morgan, 45 So.3d 63, 65 (Fla. 2d DCA 2010)). However, “the protection of former customers generally does not qualify as a legitimate business interest where no identifiable agreement exists with such customers establishing that they would return with future work.” Carter, 9 So.3d at 1265 (citing Ethan Allen, Inc. v. Georgetown Manor, Inc., 647 So.2d 812 (Fla.1994)). Additionally, protection of an employer from ordinary competition is not a legitimate business interest, and a covenant designed solely for that purpose will not be enforced. PartyLite Gifts, Inc. v. MacMillan, 895 F.Supp.2d 1213, 1224 (M.D.Fla.2012) (interpreting section 542.335(1)(b) and (c), Florida Statutes); Colucci v. Kar Kare Auto. Grp., Inc., 918 So.2d 431 (Fla. 4th DCA 2006) (recognizing an agreement whose sole purpose is to prevent competition per se is void as a matter of public policy).
The party seeking enforcement of the non-compete agreement must present a prima facie case that the restrictions are reasonably necessary to protect its legitimate business interests. § 542.335(l)(c), Fla. Stat. (2014). In other words, evidence that a party violated a broadly worded restrictive covenant is not enough to warrant relief, because Florida statutory law (as a matter of public policy) does not allow a party to enforce a restrictive covenant unless it proves that enforcement is necessary to protect its legitimate business interests.

Facts Established at the Hearing

Tech Guys builds and optimizes automated online sales and online marketing systems for its customers. It has been in business since 2005. Tech Guys does not have any employees, preferring instead to hire independent contractors. Chinn is a former Tech Guys independent contractor whose contract contained a non-compete covenant. Evans is also a former contractor for Tech Guys, but his contract did not contain a non-compete provision.[2] Evans and Chinn formed their own company, X-Tech, which provides similar services to similar customers. At the evidentiary *117 hearing, Tech Guys proved that Chinn’s work for- former Tech Guys clients RRI- and E-data violated the ternas of the restrictive covenant in Chinn’s contract, which expressly prohibited him from working directly or indirectly for current or former Tech Guys customers after leaving Tech Guys. There was "no evidence that Chinn had performed services for any current or other former Tech Guys customer, nor any evidence that Chinn had solicited any Tech Guys customer, after leaving Tech Guys.
With respect to RRI, the evidence showed that Tech Guys began working with RRI in 2008 and that RRI was a large client that brought in a substantial amount of revenue from the years, 2010 until November 2013. However, RRI nevr er maintained an exclusive relationship with Tech Guys. In fact, RRI hired a number of Tech Guys’ competitors to provide essentially the same services during this same period. It was undisputed that RRI contracted with various companies to perform its online sales and marketing based upon competitive bidding. Prior to the end of RRI’s relationship with Tech Guys, the two firms entered a three-party agreement with Evans pursuant to which Evans would work exclusively on the RRI account for Tech Guys. As indicated earlier, this contract did not contain a non-compete clause. Prior to the expiration of this contract, RRI approached. Evans about working direqtly with RRI. Evans agreed, and contracted with RRI through X-Tech in December 2013, after, his contract with Tech Guys and RRI ended in November 2013. Thereafter, although RRI offered to continue using Tech Guys at “industry standard rates,” Tech Guys declined and has not worked with RRI since the 2013 expiration of its joint contract with Evans and RRI. Chinn acknowledged that he was also working on the RRI account for X-Tech..
With respect to E-Data, which was not referred to in Tech Guys’ complaint or motion for temporary injunction, scant evidence was presented. Tech Guys did not provide any evidence as to when it conducted business with E-Data, the extent of its relationship with E-data, whether its relationship with E-Data was ongoing, whether it had an expectancy of a continued relationship with E-Data, or even whether E-Data still existed.
Chinn ended his relationship with Tech Guys in early 2013. The trial court determined that twenty-four months was a reasonable period for enforcement of the non-compete clause in Chinn’s contract, and that “for a period of 10 months [Chinn] honored his non-compete agreement before he’ started working with RRI” on behalf of X-Tech. When it entered the preliminary injunction on February 9, 2015, the court found “that there remain[ed] 14 months left on the non-compete period for CHINN.”

Analysis

The only “legitimate business interests” alleged or argued in this case are Tech Guys’ purported “substantial relationships” with RRI and E-data. However, Tech Guys did not present competent, substantial evidence demonstrating that enforcement of Chinn’s non-compete agreement was necessary to protect its business interests with regard to either company. With respect to E-data, the record does not even contain enough information to meaningfully discuss the relationship. With respect to RRI, the record demonstrates that Tech Guys never had an exclusive'contract with RRI, nor any reasonable-- expectation that it would continue to provide services to RRI when its contract expired in late 2013: The record also demonstrates that Tech Guys could have continued working with RRI, had it chosen *118 to do so. These facts are insufficient to support- the trial court’s finding of a substantial business relationship in need of protection. Cf. Carter; Anich Indus., Inc. v. Raney, 751 So.2d 767 (Fla. 5th DCA 2000).
REVERSED.
LAWSON, C.J., PALMER and LAMBERT, JJ., concur.

. Tech Guys did not cross-appeal the trial cotirt's denial of its motion for temporary injunction as to Evans,

. Evans’ original contract with Tech Guys contained the same restrictive covenant that appears in Chinn's contract. However, prior to leaving Tech Guys, Evans negotiated a new contract without’a restrictive covenant, which superseded the prior contract.