[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

————————————————

No. 16-11878
Non-Argument Calendar

————————————————

D.C. Docket No. 9:15-cv-81049-RLR

TRANSUNION RISK AND ALTERNATIVE DATA SOLUTIONS, INC.,

Plaintiff - Appellant,

versus

SURYA CHALLA,

Defendant - Appellee.

————————————————

Appeal from the United States District Court
for the Southern District of Florida

————————————————

(January 12, 2017)

Before JORDAN, JULIE CARNES and JILL PRYOR, Circuit Judges.

PER CURIAM:

TransUnion Risk and Alternative Data Solutions, Inc. ("TRADS") appeals the district court's denial of its motion for a preliminary injunction seeking to enjoin one of its former employees, Surya Challa, from working for a competitor. The district court concluded that although TRADS was likely to succeed on the merits of its claim that Challa breached a noncompetition agreement, it could not demonstrate that it would be irreparably injured absent an injunction. On appeal, TRADS argues that the district court applied an incorrect legal standard and reached a clearly erroneous factual determination. After careful review, we affirm the district court's denial of a preliminary injunction.

## I.  BACKGROUND

### A.  Factual Background

The following facts were elicited at the district court's hearing on TRADS's motion for a preliminary injunction. TRADS is a "data fusion" company, offering products that aggregate fragmented information about people, businesses, and assets. Its core product, TLOxp, enables TRADS's clients—typically government, law enforcement, licensed investigators, and corporate fraud divisions—to obtain a cohesive set of data on identified entities. TRADS was formed in December 2013 when its parent company, TransUnion, purchased a data fusion company called TLO, LLC ("TLO"), after TLO filed for bankruptcy.

2

TRADS is not the only company in the data fusion market.  Before TLO filed for bankruptcy, it acquired Interactive Data, LLC ("Interactive"), another data fusion company.  The acquisition was subsequently unwound in bankruptcy, and Interactive later was acquired by The Best One, Inc. ("TBO").  Today, both TBO and Interactive are subsidiaries of IDI, Inc. ("IDI").  IDI—via its basic product, IDI Basic, and its planned advanced product, idiCORE—is a competitor with TRADS in the data fusion market.  idiCORE is expected to compete directly with TLOxp.

Challa was an employee of TLO prior to its acquisition by TransUnion.  While employed at TLO, Challa executed a noncompetition agreement extending for two years following the end of his employment at TLO.  Challa subsequently was employed by TRADS after TransUnion's acquisition of TLO.  As a matter of good will, TRADS offered Challa the opportunity to enter into its standard noncompetition agreement, which extended for only one year after the end of his employment with TRADS.  Challa accepted the offer.  The new noncompetition agreement explicitly listed Interactive as a competitor for whom Challa could not work.

In November 2014, Challa tendered his resignation at TRADS, informing the company that he had accepted a position with Bloomberg in New York.  Challa, however, then received an offer from TBO, Interactive's parent company, to work on the company's data fusion platform.  Without informing TRADS that

3

he had changed his plans, Challa accepted the position at TBO. Challa's last day at TRADS was December 5, 2014, and he began work at TBO, which eventually became a subsidiary of IDI, on either December 16 or 18, 2014. Challa subsequently left IDI on December 15, 2016.[1]

Challa worked in a different capacity at IDI than he did at TRADS. At TRADS, Challa was directly involved in the development of TLOxp. He was responsible for writing code for the product, leading data initiatives and integrating acquired data into the product, and assessing strengths and weaknesses of the product. As part of his job at TRADS, Challa would interact with data vendors and occasionally with TRADS's clients. By contrast, at IDI, Challa had no responsibility for building or integrating data into IDI's data fusion software. Instead, Challa was tasked with building cloud infrastructure to house idiCORE and IDI Basic, a substantially different task, albeit one that Challa admits

---

[1] After this appeal was fully briefed, Challa filed a motion to dismiss the appeal as moot, informing the Court that he no longer worked at IDI. We deny Challa's motion. While cessation of the behavior purportedly subject to a preliminary injunction typically moots a motion for a preliminary injunction, there is an exception where: "(1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there [i]s a reasonable expectation that the same complaining party would be subjected to the same action again." *Weinstein v. Bradford*, 423 U.S. 147, 149 (1975). Here, given Mr. Challa's history—wherein he immediately violated a noncompetition agreement and failed to inform his former employer about his new place of work—there is a "reasonable expectation" that Challa will work for a TRADS competitor in the next year. Moreover, Mr. Challa has provided the Court with virtually no information about his future plans aside from a bare promise to not work for a TRADS competitor. *See Vencor, Inc. v. Webb*, 33 F.3d 840, 844 (7th Cir. 1994) (holding that an appeal from a district court's denial of a preliminary injunction was not moot where employee no longer worked for competitor, but worked in a specialized industry and provided minimal information about his future employment plans). Consequently, we find that TRADS' appeal is not moot, and we will evaluate it on its merits.

contributed to the functionality of a competitive product. Challa had substantial experience developing infrastructure—including cloud infrastructure—prior to his employment with TRADS.

Challa testified that the hardware-centric nature of his job at IDI was significantly different than his software-focused position at TRADS, such that the proprietary knowledge he obtained at TRADS was of no use to him at IDI. Instead, Challa explained that at IDI he relied on his prior training in infrastructure building, as well as the robust publicly available information on development of cloud infrastructure. Nonetheless, though Challa was not on the data team at IDI— Challa worked in Florida while the data team is based out of Seattle—he interacted with the idiCORE and IDI Basic data team on a regular basis, often traveling to meet with them. Indeed, IDI's data fusion products are not wholly separate from the infrastructure on which they are housed, and Challa recognized that an understanding of the underlying data fusion products is necessary to build a competent infrastructure.

Challa further testified that in addition to the physical separation between himself and IDI's data team, he was careful to reveal none of TRADS's proprietary information. He explained that he did not participate in—and in fact, intentionally left the room during—any meetings where the subject may have arisen, and further, that no one at IDI ever asked him to reveal such information. Moreover,

5

several witnesses testified that the data fusion industry is rapidly evolving, suggesting Challa's proprietary knowledge was of limited usefulness, though other witnesses disputed that notion.

## B.    Procedural History

Upon discovering that Challa had gone to work for IDI and not Bloomberg, TRADS filed a diversity action against Challa in the district court alleging breach of the noncompetiton agreement and seeking injunctive relief under Fla. Stat. § 542.335.  TRADS subsequently moved for a preliminary injunction, which the district court denied after holding a hearing and taking testimony.  Although the district court found that TRADS was likely to succeed on the merits of its claim that Challa breached the noncompetition agreement, it concluded that TRADS was unlikely to suffer irreparable harm absent a preliminary injunction.  In making this determination, the district court relied on Challa's assurances that he had not and would not share TRADS's proprietary information with IDI, as well as the substantial differences between Challa's position at TRADS and his position at IDI.  The district court found that Challa's reliance on publicly available information and skills that he developed prior to working for TRADS or TLO supported his testimony that he had no need to use TRADS's proprietary information at IDI.  This appeal followed.

6

## II.  STANDARD OF REVIEW

We review the district court's ruling on a motion for a preliminary injunction for an abuse of discretion.  *Jysk Bed'N Linen v. Dutta-Roy*, 810 F.3d 767, 773 (11th Cir. 2015).  "A district court abuses its discretion if it applies an incorrect legal standard, follows improper procedures in making the determination, or makes findings of fact that are clearly erroneous. A district court may also abuse its discretion by applying the law in an unreasonable or incorrect manner."  *Id*. at 773-74 (internal quotation marks omitted).

## III.  DISCUSSION

To obtain a preliminary injunction, the movant must establish:  (1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered unless the injunction is issued; (3) that the threatened injury to the moving party outweighs whatever damage the proposed injunction might cause the non-moving party; and (4) that, if issued, the injunction would not be adverse to the public interest.  *Id*. at 774.  This appeal principally concerns the second prong: whether TRADS will suffer irreparable injury unless the injunction issues.

TRADS argues that the district court applied an incorrect legal standard in conducting its irreparable injury analysis because it failed to consider potential harm to TRADS as a result of Challa's employment at IDI.  In TRADS's view,

7

Challa's mere presence at IDI created an "irreparable injury," irrespective of the likelihood that Challa actually would disclose TRADS's proprietary information or the imminence of actual disclosure.  We disagree.

The district court found that the noncompetition agreement was enforceable, and that TRADS had a substantial likelihood of success on the merits of its claim that Challa breached the agreement.  Under Florida law, the district court's determination gave rise to "a presumption of irreparable injury to the person seeking enforcement of a restrictive covenant."  Fla. Stat. Ann. § 542.335(1)(j).  This presumption shifted to Challa the burden of demonstrating that his employment at IDI did not cause irreparable harm to TRADS.  *See Proudfoot Consulting Co. v. Gordon*, 576 F.3d 1223, 1231-32 (11th Cir. 2009).

The district court did not err in finding that Challa met that burden.  For an injury to be irreparable, it must be "neither remote nor speculative, but actual and imminent."  *Ne. Fla. Chapter of Ass'n of Gen. Contractors of Am. v. City of Jacksonville*, 896 F.2d 1283, 1285 (11th Cir. 1990) ("*Gen. Contractors*"); *see also Siegel v. LePore*, 234 F.3d 1163, 1176–77 (11th Cir. 2000) (same).  In finding that TRADS would suffer no irreparable injury absent the injunction, the district court credited Challa's testimony that he has not and would not use or disclose any of TRADS's proprietary information while working at IDI.  In addition, the district court found credible Challa's explanation of the nature of his position—which was

8

substantially different than his former position at TRADS—as well as his discussion of the information he relied upon in his day-to-day work at IDI, the experience he gained outside of his employment at TRADS, and "the reasons why he ha[d] no need for TRADS's confidential and proprietary information in his position at IDI, despite the close relationship between hardware and software in the data fusion industry." (Doc. 93 at 13).[2]  The district court also found persuasive the testimony of witnesses presented by both parties indicating that the data fusion industry is rapidly evolving, minimizing the usefulness of proprietary knowledge Challa possessed, which at the time of the district court's decision was at least 14 months old.  (Id. at 13–14).  TRADS has given us no reason to disturb the district court's credibility findings, which we afford substantial deference.  *Lincoln v. Bd. of Regents of Univ. Sys. of Ga.*, 697 F.2d 928, 939 (11th Cir. 1983) (noting that a clear error "standard of review imposes an especially heavy burden on the appellant . . . [where] the evidence was largely testimonial, and the district court had the advantage of observing the witnesses and evaluating their credibility firsthand.").[3]

---

[2] Unless otherwise specified, all citations in the form "Doc. __" refer to the district court docket entries.

[3] Without citation to any legal authority, TRADS argues that the district court "reached a clearly unreasonable or incorrect conclusion" because that conclusion would allow employees subject to noncompetition agreements to avoid enforcement simply by promising not to reveal proprietary information.  That is incorrect.  To decide that the former employer will not suffer irreparable harm absent an injunction, the district court must find—as the district court did here—that the evidence and testimony presented by the employee is credible.  Whether the

TRADS argues that it is of no import that the district court found that Challa was unlikely to reveal any useful proprietary information to IDI. According to TRADS, the mere possibility that Challa may at any point divulge confidential information *required* the district court to find irreparable harm. The authority TRADS cites does not support the existence of such a requirement. TRADS principally relies on *Proudfoot*, where we held that a noncompetition agreement was enforceable in part because the former employee possessed proprietary knowledge. 576 F.3d at 1234-36. But that a noncompetition agreement is enforceable does not necessitate the conclusion that its breach will cause the former employer to suffer irreparable harm. Indeed, an enforceable agreement is the bare minimum necessary to meet the first prong of our preliminary injunction analysis—here, likelihood of success in establishing Challa's breach of an enforceable noncompetition agreement. In essence, TRADS maintains that the "enforceability" and "irreparable harm" analyses are coextensive, collapsing the first prong of our preliminary injunction analysis into the second. Or, put another way, TRADS asks the Court to convert the rebuttable presumption of irreparable harm created by breach of an enforceable covenant into an irrebuttable

---

employee successfully rebuts the presumption of irreparable harm is a fact-sensitive inquiry that will vary from case to case.

presumption. This is contrary to the law. *Id.* at 1231 (noting that the presumption of irreparable injury is rebuttable).

The Florida cases TRADS cites are equally unsupportive. As TRADS notes, *Capraro v. Lanier Business Products, Inc.*, 466 So. 2d 212 (Fla. 1985), and *Environmental Services, Inc. v. Carter*, 9 So. 3d 1258 (Fla. Dist. Ct. App. 2009), indicate in the abstract that the presumption of irreparable harm occasioned by violation of a noncompetition covenant includes "potential" harm. But this indication does not confront the circumstance here, where the district court credited testimony establishing that the "potential" injury to TRADS was unlikely to materialize. Indeed, in *Carter*, the court explicitly noted that "it was the former employees' responsibility to demonstrate the absence of irreparable injury, which they failed to do." 9 So.3d at 1266. Here, Challa established that the possibility he would pass on TRADS's propriety information was remote, rebutting the presumption of irreparable injury.

TRADS's proposed rule fundamentally conflicts with the law of this circuit that "irreparable" injuries must be "actual and imminent." *Gen. Contractors*, 896 F.2d at 1285. Were the virtually *per se* rule that TRADS advances adopted, a court would be forced to find irreparable harm even if it reasonably reached the factual determination that there was no chance whatsoever that the former employee would divulge proprietary information to a competitor. In essence, it would

11

*require* a finding of irreparable injury even where the putative harm is prospective and wholly speculative. We have held that such harm is not "actual and imminent." *See Siegel*, 234 F.3d at 1176–77 (holding that there was no irreparable injury where the harm was "wholly speculative"). Consequently, the district court did not err in finding that Challa successfully rebutted the presumption of irreparable harm.[4]

## IV. CONCLUSION

For the foregoing reasons, we affirm the district court's order denying the motion for a preliminary injunction.

**AFFIRMED.**

---

[4] Because we hold that the district court did not err in finding that TRADS would not suffer irreparable harm absent a preliminary injunction, we need not consider TRADS's additional arguments concerning the third and fourth preliminary injunction prongs.